IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SMITH & NEPHEW, INC.,

    Plaintiff,

v.                          No. 02-2455 B

FEDERAL INSURANCE CO.,

    Defendant.

---

ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

This diversity action for declaratory judgment was brought by the Plaintiff, Smith and Nephew, Inc. ("Smith and Nephew"), for a determination of its right to defense and indemnity under a commercial general liability policy issued by Federal Insurance, Co. ("Federal") with respect to claims brought against it in 1997 by Lt. Col. Mary E. Reid in the United States District Court for the Western District of Texas.[1] On August 22, 2003, this Court granted a motion filed by Federal for summary judgment and, consistent with that opinion, dismissed the action. Plaintiff appealed the dismissal to the United States Court of Appeals for the Sixth Circuit, which determined that this Court erred in finding that the claims asserted against Smith and Nephew in the underlying suit, as specified in the amended complaint, were outside the scope of the insurance policy. See Smith & Nephew, Inc. v. Federal Ins. Co., No.03-6236, 113 Fed. Appx. 99 (6th Cir. 2004). Upon consideration of the allegations set forth by Reid in both the original and amended complaints, the Sixth Circuit concluded that, absent some exclusion permitting otherwise, Federal did owe Smith

---

[1] See Reid v. Geurink, T.G. Medical, Inc. and Smith and Nephew Richards, Inc., No. SA-97-CA-0268, (W.D. Tex. filed Feb. 28, 1997).

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 11-23-05

and Nephew a duty to defend under the terms of the policy and remanded the suit to this Court for further proceedings.

Upon remand to this Court, Federal sought and was granted leave to amend its answer to assert a defense that Smith and Nephew failed to timely submit its claim as required by the policy. Before the Court are the parties' cross motions for summary judgment on this issue. Federal filed its motion for summary judgment seeking dismissal on August 3, 2005 and Smith and Nephew filed its motion for partial summary judgment seeking a declaration that it is entitled to the reasonable costs and expenses it incurred in defending the underlying suit on August 5, 2005. As both parties have responded to the motions, the matters are now ready for disposition.

## SUMMARY JUDGMENT STANDARD

Rule 56© provides that a

> judgment . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed. R. Civ. P. 56©; see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir. 1988). In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). When the motion is supported by documentary proof such as depositions and affidavits, the nonmoving party may not rest on his pleadings but, rather, must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586. These facts must be more than a scintilla of evidence and must meet the standard of whether a

reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. In this circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action." Lord v. Saratoga Capital, Inc., 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989)). The "judge may not make credibility determinations or weigh the evidence." Adams v. Metiva, 31 F.3d 375, 379 (6th Cir. 1994).

## FACTS

The following facts are undisputed unless noted. Smith and Nephew is a Memphis, Tennessee based manufacturer of medical and surgical implements which supplies its products to hospitals and medical clinics, including armed forces medical centers. (Declaration of James A. Ralston ("Ralston Decl.") ¶ 2.) The company purchased general commercial liability insurance from Federal with coverage effective from April 1, 1993 through April 1, 1994 and from September 1, 1994 through September 30, 1995. (Def.'s Answer Pl.'s First Set Interrogs. No. 3.)

On February 28, 1997, Smith and Nephew (formerly, Smith and Nephew Richardson, Inc.) was named as a defendant in a suit brought by Lt. Col. Mary E. Reid, a former military surgeon, in the Western District of Texas alleging that the company conspired with T.G. Medical, Inc., Terry Geurink, and Col. Allan Bucknell to violate federal procurement statutes and to conceal the

violations, in part through actions intended to damage her reputation.[2] Reid subsequently filed an amended complaint on May 7, 1999.

It is undisputed that Smith and Nephew did not immediately or timely notify Federal of the Reid litigation after it was served on or around March 19, 1997. ((Def.'s Mot. Summ. J. ("Def.'s Mot.") Ex. 2, Dep. Jean Mercer ("Mercer Dep.") at 236 and Pl.'s Mem. Opp. Def.'s Mot. Summ. J. ("Pl.'s Opp.") at 3.) Following notice of the claim against it, the risk management personnel at Smith and Nephew reviewed the complaint but determined that there was no coverage available for the suit. (Mercer Dep. at 187.) Based on this belief, Smith and Nephew did not submit the claim to Federal, but rather, retained attorney Laurence Macon to defend the company in the suit at a rate of $350 per hour. (Id. at 78.)

It is also undisputed that Smith and Nephew was aware of the possible viability of a statute of limitations defense to Reid's claims when it filed its motion to dismiss early in the litigation. (Def.'s Mot. Dep. R. Laurence Macon ("Macon Dep.") at 77-79.) However, Plaintiff maintains that further discovery was necessary to determine the validity of the argument, and thus, Smith and Nephew did not assert the defense at that time. ( Id. at 79-80.) The lawsuit proceeded through substantial discovery and on April 30, 1999 Smith and Nephew filed a motion for summary judgment on the grounds that Reid lacked any evidence that the company participated in the alleged conspiracy and further, that Reid's claims were barred by the applicable statute of limitations. (Decl. Katherine Compton ("Compton Decl.") ¶ 3 and Ex. A at 4-19.) Prior to the district court's ruling

---

2 The specific details of the allegations set forth in Reid were discussed in this Court's order of August 22, 2003 and will not be restated here.

4

on its motion for summary judgment and after rejecting two prior offers from Reid to settle,[3] Smith and Nephew agreed to settle the Reid lawsuit on February 23, 2000 for $500,000. (Def.'s Mot. Ex. 7 at 1302.) Before the settlement was memorialized, Western District of Texas Judge H.F. Garcia issued an opinion on March 15, 2000 granting Smith and Nephew's motion and dismissing the action on the basis that the statute of limitations did in fact bar the claim. (Compton Decl. Ex. K at 1-3.) Reid subsequently filed a notice of appeal on April 13, 2000 to the United States Court of Appeals for the Fifth Circuit. ( Id. ¶ 10.) Thereafter, the parties executed a confidential Full and Final General Release and Settlement, after which Reid voluntarily dismissed her appeal and Smith and Nephew made payment in the amount of $500,000. (Ralston Decl. ¶ 8 and Compton Decl. ¶ 11.)

Plaintiff first provided Federal with notice of the Reid action on April 26, 1999 by forwarding a copy of the original complaint to its insurance broker, who, in turn, forwarded it to Federal. (Mem. Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot."), Ex. A, Dep. Bonnie Diane Wood ("Wood Dep.") at 41 and Pl.'s Opp. Ex. F and G.) Smith and Nephew later provided Federal with a copy of the amended complaint, when it was filed by Reid, on May 7, 1999. (Wood Dep. at 44. and Pl.'s Mot. Ex. C.) After reviewing both the original and amended complaints, Federal determined that Reid's allegations against Smith and Nephew were not within the insuring provisions of the general liability policy.[4] (Pl.'s Mot. Ex. D, at No. 4.) Federal first notified Smith and Nephew of its refusal to defend or indemnify on that basis by email on May 26, 1999. (Pl.'s Opp. Ex. H.) The decision was

---

3 Laurence Macon, Plaintiff's counsel in the Reid litigation, testified at his deposition that Reid twice offered to settle earlier in the litigation, once for payment of $12 million and later for more than $3.7 million. Macon maintains that Smith and Nephew did not make a counteroffer because, it was the company's position, the demands were excessive. (Macon Dep. at 94-95.)

4 Federal maintains that, while both complaints were reviewed, the decision to deny coverage was ultimately based on the allegations of the amended complaint, which Federal believed to be the operative pleading. (Wood Dep. at 64-66.)

5

confirmed by letter dated June 9, 1999. (Pl.'s Mot. Ex. E.) On August 9, 1999, coverage counsel for Federal responded to Smith and Nephew's exception to Federal's denial of coverage by reaffirming the insurer's decision. (Pl.'s Mot. Ex. F.) Smith and Nephew notified the Defendant of a mediation concerning the Reid lawsuit scheduled for February 23, 2000, however, Federal declined to participate on the grounds that the insurance policy did not provide coverage for the matter. (Pl.'s Opp. Ex. P.) Following notification by Smith and Nephew of the settlement of the case, Federal reiterated its denial in a letter dated August 28, 2000, stating that it is "unequivocally evident that plaintiff's complaint is completely devoid of allegations which potentially fall within the insuring agreements." (Pl.'s Mot. Ex. G at 7.) It is undisputed that Federal did not consent to or authorize any of the fees or expenses incurred by Smith and Nephew in defending the Reid suit. (Mercer Dep. at 227.)

The commercial general liability insurance contract ("contract") at issue states, in relevant part:

### DEFENSE OF CLAIMS OR SUITS
1. We will defend claims or suits against the insured seeking damages to which this insurance applies. We may make:
    a. Such investigation of any claim or suit; and
    b. Such settlement within the applicable Amount of Insurance available;
as we think appropriate.

(Pl.'s First Mot. for Partial Summ. J. Addendum at 4.)

### DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT
(a) You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim. Notice should include:
    (1) how, when and where the occurrence took place;
    (2) the names and addresses of any injured persons and witnesses; and
    (3) the nature and location of any injury or damage arising out of the occurrence.
Notice of an occurrence is not notice of a claim.

6

    (b) If a claim is received by an insured you must:
        (1) immediately record the specifics of the claim and the date received; and
        (2) notify us as soon as practicable.
You must see to it that we receive written notice of the claim as soon as practicable.

    (c) You and any other involved insured must:
        (1) immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit; and
        (2) authorize us to obtain records and other information;
        (3) cooperate with us in the investigation, settlement or defense of the claim or suit; and
        (4) assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which the insurance may also apply.

    (d) No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

(Id.)

### LEGAL ACTION AGAINST US

No legal action may be brought against us until there has been full compliance with all the terms of this insurance; nor until the obligation of the insured has been determined by final judgment or we agree in writing to the amount of the obligation. No person or organization has any right under this insurance to bring us into any action to determine the liability of the insured.

(Id.)

### ANALYSIS

Pursuant to Tennessee law, breach of a notice provision by an insured will result in forfeiture of an insurance policy only where prejudice to the insurer is shown. Alcazar v. Hayes, 982 S.W.2d 845, 856 (Tenn. 1998); see also American Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 817-18 (Tenn. 2000) (applying Alcazar to liability insurance policies). Once the insured's failure to provide notice is established, it is presumed that the insurer has been prejudiced. Alcazar, 982 S.W.2d at 856. However, "[t]he insured may rebut this presumption by proffering competent evidence establishing that the insurer was not prejudiced by the insured's delay." Id. In considering

7

prejudice to the insurer, the Tennessee Supreme Court has noted that

> [t]he purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at trial, and the possible operation of fraud, collusion, or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. If the insurer is given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation.

Alcazar, 982 S.W.2d at 849 (quoting 1 Eric Mills Holmes & Mark S. Rhodes, Appleman on Insurance § 4.30 (2d ed.1996)); see also Allstate Ins. Co. v. Fitzgerald, 743 F. Supp. 539, 542 (W.D. Tenn. 1990) ("[t]he general purpose of a notice provision is to make the insurer aware that a claim may be forthcoming and provide an adequate opportunity for investigation"). With these principles in mind, the Court turns to consideration of the parties assertions.

As Smith and Nephew concedes that it did not timely notify Federal of the claim against it consistent with the terms of the insurance policy, prejudice is presumed. (Mercer Dep. at 236 and Pl.'s Resp. Def.'s Facts ¶ 22.) Plaintiff advances three arguments in an effort to rebut the presumption of prejudice. First, Plaintiff contends that because Federal believed the Reid suit was not covered by the policy, even if timely notice was provided, the insurer's response would have remained the same. Thus, any impact on the Defendant's ability to pursue the action cannot be attributed to the timing of the notice. Second, Smith and Nephew argues that there is no evidence that Federal's opportunity to investigate, defend, or settle the Reid claims was impaired by the late notice. Finally, Plaintiff contends that, even if unreasonable, the fees incurred as a result of Smith and Nephew's defense and settlement of the claim did not prejudice Federal because the insurer is

8

only liable for those costs and expenses that are reasonable.

Smith and Nephew first asserts that Federal's conduct upon notice of the <u>Reid</u> litigation conclusively rebuts the presumption that it suffered prejudice as a result of the failure to comply with the notice provisions of the insurance contract. Because Federal maintained that it had no duty to defend or indemnify the Plaintiff on the basis of the allegations set forth in both the original and amended complaints, Smith and Nephew maintains that the insurer would not have defended the suit even upon timely notice. Thus, according to the Plaintiff, Federal cannot claim to have suffered prejudice in its ability to investigate, defend or settle because of late notice of a suit for which it never would have provided coverage.

In response, the Defendant asserts that Plaintiff's argument is based entirely upon conjecture as to what action Federal would have taken had Smith and Nephew honored the notice provisions. Federal does not dispute that it received notice of, and reviewed, both the original and amended complaints in connection with its coverage decision. However, it maintains that the coverage decision was ultimately based on the allegations set forth in the amended complaint. Federal relied on the amended complaint because it believed that the original complaint was superceded by the later pleading, a position also taken by this Court in ruling on the parties' first motions for summary judgment. Federal argues that had it received timely notice of the original complaint as required by the contract, it "more likely than not would have handled the claim differently. . . " (Def.'s Resp. Pl.'s Mot. Partial Summ. J. ("Def.'s Resp."), Aff. B. Diane Wood ("Wood Aff.") ¶ 7.) The Court notes that the Sixth Circuit decision finding that Federal did have a duty to defend under the terms of the contract lends some support to the Defendant's position. After concluding that the allegations in both the original and the amended complaints should be considered in order to determine

9

Federal's duty to defend during the period in which each was the operative pleading, the appellate court held that the original complaint "clearly alleged" claims within the terms of the contract whereas "it is not plain on the face of the [amended] complaint that Reid did not allege" facts bringing the claim within coverage. Smith & Nephew, Inc., 113 Fed.Appx. at 102, 105. Thus, according to this argument, had Federal been provided with the original complaint, it might have determined that the allegations were within the scope of the policy coverage.

However, as Smith and Nephew notes, despite Defendant's argument that it "more likely than not" would have responded differently had it been timely notified of the original complaint, Federal has advanced a contrary position during the course of this litigation up to this point. In its January 10, 2003 pleading in support of its motion for summary judgment, Federal asserted that it is "clear that Lt. Col. Reid's original complaint and amended complaint are *both* completely devoid of allegations which even potentially fall within the insuring agreements." (Mem. Supp. Def.'s First Mot. Summ. J. at 9.) (emphasis added) Similarly, on appeal of this Court's ruling, Federal maintained before the Sixth Circuit that

> [b]oth the original and amended complaint filed by Reid are based upon alleged conspiratorial acts (including willful violation of penal statutes) that were intentionally designed to deter plaintiff's inquiries concerning the defendants' improprieties, and further cause harm and injury to Reid. The calculated and deliberate nature of the defendants' alleged acts, along with the alleged clearly intended consequences, affirmatively remove *either* of the complaints from coverage.

(Pl.'s Opp. Ex H at 3.) (emphasis added) Because the Defendant has previously maintained that it had no duty to defend or indemnify Smith and Nephew on the allegations asserted in Reid's original or amended complaints, the Court concludes that there is no genuine issue of fact for trial regarding whether Federal would have made an alternative determination regarding coverage had it been

10

provided timely notice of Reid's original complaint. See United States v. One-Heckler-Koch Rifle, 629 F.2d 1250, 1253 (7th Cir. 1980) (finding that an attorney's representation in a brief in opposition to summary judgment, though not a pleading or affidavit, may be treated as an admission for purposes of determining the presence or absence of a material fact).

Further, as Plaintiff next argues, beyond Federal's allegation that it might have acted differently in response to timely notice, the record offers no evidence that the insurer has suffered prejudice. The Tennessee Supreme Court has provided a non-exhaustive list of factors for consideration when assessing prejudice to an insurer from untimely notice, including the "(1) availability of witnesses; (2) ability to discover other information; (3) existence of official reports concerning the occurrence; (4) preparation and preservation of demonstrative and illustrative evidence; and (5) ability of experts to reconstruct the occurrence." U.S. Fire Ins. Co. v. Vanderbilt University, 267 F.3d 465, 475 (6th Cir. 2001) (citing Alcazar, 982 S.W. 2d at 856).

Plaintiff asserts that upon notice of the Reid claim, it promptly took all necessary and prudent steps to protect its interests. (Pl.'s Opp. at 10.) After hiring outside counsel, Smith and Nephew filed a motion to dismiss aimed at encouraging Reid to plead her claims more specifically. (Id.) After the motion was denied, it completed all discovery necessary to preserve testimony and prepare adequately for the company's defense. (Id.) Utilizing evidence obtained in discovery, Smith and Nephew subsequently filed a motion for summary judgment which was granted by the district court. (Id.) There is no indication from the record that any evidence was lost, or that any defense was waived or impaired as a result of Smith and Nephew's efforts to defend the suit. Further, Plaintiff has provided evidence that it notified Federal of the Reid suit in April 1999, well in advance of its agreement with Reid to settle in February 2000. Federal cannot claim to have suffered prejudice

11

from its decision not to participate in negotiations after notice and opportunity. As indicated in the affidavit of B. Diane Wood, even if Federal disputed its duty to provide coverage, it could have assumed the defense of Smith and Nephew and thus, participated in settlement discussions, under a reservation of rights. (Wood Aff. ¶9.) As to prejudice resulting from any lost opportunity to settle earlier in the litigation, the Plaintiff has sufficiently demonstrated that the only offers to settle prior to February 2000 were in clear excess of the amount ultimately resolving the matter.[5]

Federal's argument in support of a finding of prejudice relies on the fact that Smith and Nephew was aware of a statute of limitations defense, which was ultimately successful, but did not assert it in its motion to dismiss filed early in the litigation. Rather, according to Federal, the Plaintiff entered into a costly and lengthy discovery process which, by the time Federal was provided notice, amounted to $250,000 in defense costs. (Mercer Dep. at 99.) The Court finds that this argument is unpersuasive. First, Plaintiff has sufficiently rebutted any inference of prejudice resulting from the legal strategy pursued by Smith and Nephew through the deposition testimony of Laurence Macon, counsel for the insured in the Reid suit. According to Macon, discovery was necessary before asserting that the two-year statute of limitations applicable to Reid's conspiracy claim barred the action because the availability of the defense was questionable on the face of the complaint alone. (Macon Dep. at 79-81.) According to the complaint filed on February 28, 1997, the first overt act of the alleged conspiracy was the filing of a lawsuit on February 28, 1995. (Id.) Macon contends that because the law was unclear on whether a suit filed on the same day is within

---

[5] Prior to the agreement reached in February 2000, Reid made two settlement demands, the first of which was for $12 million and the second was in the amount of $3.7 million. Counsel for Smith and Nephew testified at his deposition that the company did not make a counteroffer to these demands because it believed them to be unreasonable. (Macon Dep. at 94-95.)

12

the statute of limitations and because there was some evidence that Reid did not actually have notice of the filing of the suit until after February 28, 1995, discovery was necessary before asserting the defense. (Id.) Federal contends, however, that despite Macon's testimony, the discussion of the statute of limitations defense in the motion filed with the district court relied entirely on the original and amended complaints, and not on evidence gained through discovery. (Def.'s Facts ¶ 10.) Plaintiff responds, however, that while the portion of the motion on the statute of limitations did not contain reference to evidence obtained through discovery, the preceding eleven pages explained the affirmative evidence, showing that Plaintiff did not participate in the conspiracy.

Federal does not provide any proof to demonstrate that, in light of Plaintiff's explanation of the need for discovery, its use of the limitations defense in a motion for summary judgment rather than a motion to dismiss impacted Federal's ability to defend the claim. Rather, Federal's central contention in support of its claim of prejudice is that the litigation strategy pursued by Smith and Nephew in the absence of notice or consent resulted in more protracted and costly litigation than necessary. Specifically, Federal maintains that Plaintiff's decision to wait to assert the statute of limitations defense until the filing of its motion for summary judgment resulted in higher legal costs because of discovery. Federal also notes that counsel hired by Smith and Nephew charged an hourly rate of $350 whereas counsel retained by Federal to defend its insureds in similar litigation during the relevant time period charged an hourly rate no higher than $130 per hour. (Def.'s Mot. Ex. 1, Aff. Diane Wood ("Wood Aff.") ¶ 6.) Finally, Federal takes issue with Smith and Nephew's agreement to settle the litigation for $500,000 just weeks before a summary judgment order was issued by the district court in its favor. The Court finds Defendant's argument to be without merit.

"[T]he damages and consequent liability of an insurer for breach of the contractual duty to

13

defend an insured ordinarily is limited to the amount of the policy plus reasonable costs incurred in providing a defense for the insured." National Service Fire Ins. Co. v. Williams, 61 Tenn. App. 362, 370, 454 S.W.2d 362, 265 (Tenn. App. 1969). Because the reasonableness of the defense and settlement expenses incurred by Smith and Nephew have not yet been determined and Federal will not be held liable for any expenses deemed unreasonable, the insurer cannot maintain that it has suffered prejudice by their incurrence alone.

Based on the above facts, the Court determines that Smith and Nephew has rebutted the presumption that prejudice to Federal resulted from its failure to comply with the notice provisions of the insuring agreement. Further, because there is no issue of genuine material fact as to whether Federal suffered prejudice as a result, the Court concludes that Smith and Nephew's breach of the notice provision did not result in forfeiture of the policy. See Standard Construction Co. v. Maryland Casualty Co., No. 01-2006V, 2002 WL 1477886 (W.D. Tenn. May 15, 2002) (finding that insurer did not suffer prejudice from untimely notice where adequate discovery was conducted, helpful witnesses were not lost, and the insurer was provided notice and an opportunity to participate prior to settlement).

## CONCLUSION

Accordingly, for the reasons articulated herein, Defendant's motion for summary judgment is DENIED and Plaintiff's motion for partial summary judgment is GRANTED.

IT IS SO ORDERED this 22nd day of November, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 120 in case 2:02-CV-02455 was distributed by fax, mail, or direct printing on November 23, 2005 to the parties listed.

Martin C. Pentz
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210--260

Mark Vorder-Bruegge
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

William B. Jakes
HOWELL & FISHER
300 James Robertson Pkwy
Nashville, TN 37201--110

Honorable J. Breen
US DISTRICT COURT