UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

FILED BY ~ *CG* D.C.

05 DEC 15 AM 11: 34

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D ... THIS

| | | |
|---|---|---|
| SMITH & NEPHEW, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 02-2455-B |
| | ) | |
| FEDERAL INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

## ~~PROPOSED~~ JOINT PRETRIAL ORDER

Plaintiff Smith & Nephew, Inc. and Defendant Federal Insurance Co. hereby submit this Proposed Joint Pretrial Order.

### 1.  Parties Remaining In The Case

The caption provides a complete listing of all parties, Plaintiff Smith & Nephew, Inc. and Defendant Federal Insurance Company, who remain in the case.

### 2.  Remaining Jurisdictional Questions

The parties submit that are no remaining jurisdictional questions.

### 3.  Pending Motions

The pending motions, and each party's position regarding the proper ruling thereon, include the following:

### Plaintiff's Motions:

3.1.A   Smith & Nephew's Motion in Limine Regarding Post-Settlement Summary Judgment Order, filed on November 23, 2005.

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on 12-16-05

166

B3085852.2 / 526613.3

## Plaintiff's Statement

On November 23, 2005, Smith & Nephew filed a motion *in limine* to prohibit Federal

from introducing, or making or eliciting any reference to, the March 15, 2000 order issued by the

district court in the underlying *Reid* lawsuit purporting to grant Smith & Nephew summary

judgment *after* the case had been submitted to mediation and a settlement had been reached (the

"Post-Settlement Order").  Smith & Nephew believes that the proper ruling is that this motion

should be granted and that Federal be prohibited from offering the Post-Settlement Order in

evidence, and from making or eliciting any reference to the Post-Settlement Order, whether in

opening statement, closing argument, questions to witnesses, reference to any document, or

otherwise, and that Federal be directed to advise all of its witnesses of the existence of this

preclusion order and of their duty to abide by its terms.

Federal should be precluded from using the Post-Settlement Order in any way to attack

the reasonableness of Smith & Nephew's defense costs or settlement.  First, the Post-Settlement

Order is irrelevant because the jury's task at trial will be to evaluate the reasonableness of Smith

& Nephew's defense strategy and settlement decision based upon the information known or

knowable by Smith & Nephew *at the time the defense was mounted and the settlement was

struck*, not with the benefit of hindsight information supposedly showing what the result would

have been if the case had been defended to a conclusion.  Furthermore, admission of the Post-

Settlement Order, or the making or eliciting of any reference to it, would be unfairly prejudicial,

both because the jury's view of the reasonableness of Smith & Nephew's defense costs and

settlement would be irrevocably tainted, and because the Post-Settlement Order was based on a

misapprehension by Judge Garcia of the law regarding accrual of the civil conspiracy claim

alleged in *Reid* for purposes of application of the statute of limitations.  Finally, the Post-

Settlement Order should be excluded as inadmissible hearsay and as a severe encroachment upon the Court's function of instructing the jury regarding the law.

Moreover, there is absolutely no merit to Federal's argument that Smith & Nephew's position here somehow is inconsistent with the position it took in *Reid* regarding limitations. Smith & Nephew *never* contended that Reid's conspiracy claim accrued with respect to all overt acts at the time she knew or should have known of an injury flowing from the "first overt act." It contended, instead, that Reid never alleged or developed any proof of *any* overt act *by Smith & Nephew* in furtherance of the conspiracy, and that, accordingly, she had alleged no act *against Smith & Nephew* falling within the statutory period. Smith & Nephew believed, and still believes, that a summary judgment on *this* basis could properly have been granted, but Judge Garcia denied Smith & Nephew's motion to dismiss (which was based on the insufficiency of Reid's allegations) and never reached Smith & Nephew's "no evidence" contentions in its motion for summary judgment.

Indeed, even if Judge Garcia had reached Smith & Nephew's contention, and had purported to grant Smith & Nephew summary judgment on the basis Smith & Nephew actually argued, the Post-Settlement Order still would be inadmissible because it was issued *after* the case was resolved in mediation with Judge Sessions. It would still be the case that Smith & Nephew did not and could not have known on February 23, 2000 (when the case settled) what Judge Garcia would say in an order he issued (apparently unaware of the settlement) on March 15, 2000. The Post-Settlement Order thus would still be irrelevant even if it had been granted on the ground Smith & Nephew argued. And the doctrine of judicial estoppel would not apply for the simple and obvious reason that Smith & Nephew did not assert the statute of limitations defense *successfully – i.e.,* it did *not* secure the dismissal of the case on limitations

grounds, but rather settled with Reid; because of the settlement, there was no final determination of the Reid lawsuit and it is unknown whether a dismissal would have been upheld on limitations grounds or any other grounds, or whether a dismissal would have been reversed by the Fifth Circuit on appeal. *See Warda v. C.I.R.*, 15 F.3d 533, 538 (6th Cir. 1994) ("Judicial estoppel forbids a party from taking a position inconsistent with one successfully and unequivocally asserted by that same party in an earlier proceeding."); *see generally New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001) (listing factors determining whether judicial estoppel doctrine must be applied in a particular case: (1) a party's later position must be "clearly inconsistent" with its earlier position; (2) "whether the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped") (citations and quotations omitted).

### **Defendant's Statement**

1.      The *Reid* lawsuit was filed against Smith & Nephew in February, 1997.  (*Reid* complaint).  Smith & Nephew was represented in the *Reid* lawsuit by two capable, competent and experienced law firms, Akin Gump Strauss Hauer & Feld, LLP, of San Antonio, Texas, and Sidley & Austin of Chicago, IL.  In addition, Smith & Nephew was represented by in-house counsel Jean Mercer of Memphis.  Smith & Nephew's attorneys, who are expected to testify at trial, recognizeded that Smith & Nephew had a valid statute of limitations defense based on the plaintiff's pleadings early in the case.  (Macon Depo., p. 78; Mercer Depo., p. 158).

2.      Although Smith & Nephew's attorneys admittedly recognized that it had a valid, complete statute of limitations defense based on the plaintiff's pleadings, the statute of

limitations defense was not raised in Smith & Nephew's Rule 12 motion to dismiss filed on April 7, 1997. (Exhibit B to Plaintiff's Motion in Limine Regarding Post-Settlement Summary Judgment Order).

3.     On May 3, 1999, well over two years after the *Reid* suit was filed, Smith & Nephew filed a motion for summary judgment in the *Reid* lawsuit alleging, in part, that the applicable Texas two-year statute of limitations barred *Reid*'s claims.  The motion, insofar as it pertained to the statute of limitations, relied entirely on the complaint. (Exhibit D to Smith & Nephew's Motion in Limine Regarding Post-Settlement Summary Judgment Order).

4.     Smith & Nephew represented to the Court that "all alleged acts of Smith & Nephew occurred outside the two-year statute of limitations" and that the "last overt act in the conspiracy, if accomplished within the statute of limitations period, does not revive claims lost because of the statutory time bar." (Exhibit D to Plaintiff's Motion, p. 18).

5.     On March 15, 2000, the U.S. District Court for the Western District of Texas, San Antonio Division, granted the motion for summary judgment based upon the applicable Texas two-year statute of limitations, the very same basis urged by Smith & Nephew for dismissal. The order and opinion was based entirely on the allegations of the plaintiff's complaint and amended complaint.  (Exhibit J to Smith & Nephew's Motion in Limine Regarding Post-Settlement Summary Judgment Order).

Because Smith & Nephew successfully and unequivocally asserted a statute of limitations defense in *Reid* which is inconsistent with the position it now asserts in this action, Smith & Nephew is judicially estopped from asserting that the *Reid* matter was <u>not</u> barred by the two-year Texas statute of limitations and the Court's order granting summary judgment should be admitted.

Additionally, the order is admissible to rebut the opinions of plaintiff's expert who is expected to offer various opinions of how Judge Garcia would have ruled on certain motions.

The proper ruling is that the plaintiff's motion should be denied and the plaintiff should be prohibited from introducing evidence or offering any argument, statement or testimony that the underlying *Reid* lawsuit was not barred by the applicable statute of limitations.

Federal relies further on its response to Smith & Nephew's motion which will be filed in accord with the Local Rules of Court, 7.2.

3.2A    Smith & Nephew's Motion in Limine Regarding Expert Opinion on the Law, filed on November 23, 2005.

### Plaintiff's Statement

On November 23, 2005, Smith & Nephew filed a motion *in limine* to prohibit Federal from introducing, or making or eliciting any reference to, the opinion of Federal's attorney expert witness, David E. Chamberlain, that the underlying *Reid* lawsuit could have been successfully defended at a cost of $23,500.00 or less had Smith & Nephew promptly sought summary judgment on a statute of limitations defense.  Smith & Nephew believes that the proper ruling is that this motion should be granted and that Federal be prohibited from seeking to elicit this opinion, the analysis underlying the opinion or any testimony predicated upon it (the "Chamberlain opinions"); that Federal be prohibited from making or eliciting any reference to the Chamberlain opinions, whether in opening statement, closing argument, questions to witnesses, reference to any document, or otherwise; and that Federal be directed to advise all of its witnesses, including Mr. Chamberlain, of the existence of this preclusion order and of their duty to abide by its terms.

The motion should be granted because the Chamberlain opinions lack a reliable basis in law. The Chamberlain opinions are unreliable because they are based upon an incorrect legal premise; namely, that Reid's cause of action for civil conspiracy (under 42 U.S.C. § 1985) accrued as to *all* overt acts comprising the alleged conspiracy at the time Reid first learned that she had been harmed by *any* overt act. To the contrary, established federal case law holds that the statute of limitations in a civil action for conspiracy runs separately for each overt act that is alleged to cause damage to the plaintiff. Because this faulty legal premise renders the Chamberlain opinions unreliable, this Court should exercise its "gatekeeper" powers to exclude them.

The Chamberlain opinions also should be excluded as improperly encroaching upon the function of this Court to instruct the jury with respect to the law. It is beyond the proper role of an expert witness to tell the jury what the law is, or to tell the jury how a dispositive motion would have been decided "as a matter of law" in another case. If Federal's attorney expert did have an opinion on the limitations issue that could pass muster under the Court's "gatekeeper" review, then he could tell the jury how he would have handled the case differently, and *the Court* then would instruct the jury on the principles of limitations law they would need to know to evaluate his opinion. Because Mr. Chamberlain's analysis is based on an indisputably false premise regarding the law, however, the Chamberlain opinions must be excluded in their entirety.

Moreover, Federal misrepresents the record when it asserts that the Chamberlain opinions are the same as those espoused by Smith & Nephew's counsel in the Reid case. As noted, Smith & Nephew *never* argued the "first overt act" accrual theory mistakenly adopted by Judge Garcia in the Post-Settlement Order and now embraced by Mr. Chamberlain. Smith & Nephew simply

argued that Reid's failure to develop evidence of Smith & Nephew participation in the alleged conspiracy justified entry of a summary judgment against her, both on the merits and on limitations grounds. If Mr. Chamberlain was merely asserting that these were valid arguments, and thus that Smith & Nephew's summary judgment motion had a strong likelihood of success, the only question the parties would be debating is whether it was reasonable for Smith & Nephew nevertheless to settle with Reid for the amount paid after Judge Garcia failed to rule on the motion for more than ten months, and trial was imminent. But instead, Mr. Chamberlain is asserting (despite Judge Garcia's denial of Smith & Nephew's motion to dismiss) that the Reid case was subject to dismissal based on the "first overt act" accrual theory and the allegations of the Original Complaint, *a position Smith & Nephew never took in the Reid case*. Because Smith & Nephew's contentions in the Reid case did not even remotely resemble the Chamberlain opinions, they lend no support to the viability of his analysis, which must be judged on its own merits. When so examined, the Chamberlain opinions fails to pass muster under *Daubert* and must be excluded.

### Defendant's Statement

Federal opposes the plaintiff's motion in limine regarding the testimony of David Chamberlain. The motion should be denied.

Initially, Federal would show that Mr. Chamberlain is an attorney of extensive experience licensed to practice in the State of Texas, Fifth Circuit Court of Appeals, all U.S. District Courts of Texas, including the Northern, Eastern, Southern and Western Districts. Mr. Chamberlain maintains offices in Austin, TX and San Antonio, TX, where the *Reid* suit was filed and litigated. Mr. Chamberlain received a Bachelor of Arts degree in 1975 from the University of Texas at Arlington, and received his Juris Doctor degree, with distinction, from St. Mary's University of

San Antonio in 1978, where he was an editor of St. Mary's Law Journal and selected an outstanding law graduate. He is also a member of the Harlan Honor Society. Mr. Chamberlain has acted as a briefing attorney to Associate Justice Sears McGee of the Texas Supreme Court. He is currently the President of the Texas Association of Defense Counsel and has held numerous other offices and received various awards during the course of his practice of law for more than 25 years.

Mr. Chamberlain's opinion regarding the statute of limitations is based upon the same arguments, legal authority and representations of undisputed facts contained in Smith & Nephew's motion for summary judgment in the *Reid* case, as well as the authority cited in the order granting the motion issued by the U.S. District Court for the Western District of Texas on March16, 2000. Smith & Nephew's argument, in essence, is that its motion for summary judgment, filed subject to the requirements of Rule 11, F.R.C.P., and Judge Garcia's Order of March 16, 2000, are both wrong. Federal submits that Mr. Chamberlain's opinions, by necessity, can be no more "unreliable" than the motion for summary judgment and argument advanced by Smith & Nephew in *Reid* or Judge Garcia's Order granting the precise relief sought by Smith & Nephew on the very same grounds urged by Smith & Nephew.

Federal also opposes this motion to the extent Smith & Nephew argues that it is improper for Mr. Chamberlain to base his opinion on "how a dispositive motion would have been decided 'as a matter of law' in another case." The dispositive motion in question was, in fact, ruled on as a matter of law in *Reid*. Additionally, Mr. Chamberlain's testimony is necessary to rebut the testimony of plaintiff's expert who is expected to offer testimony concerning how Judge Garcia would have ruled on other motions in *Reid*.

Federal relies further on its response to Smith & Nephew's motion, which will be filed in accord with the Local Rules of Court, 7.2.

3.3A    Smith & Nephew's Motion in Limine to Exclude Evidence of Smith & Nephew's Assertion of Attorney-Client Privilege or Work Product Protection, filed on November 23, 2005.

### Plaintiff's Statement

On November 23, 2005, Smith & Nephew filed a motion *in limine* to prohibit Federal from introducing, or making or eliciting any reference to, evidence of Smith & Nephew's invocation of the attorney-client privilege or work product doctrine regarding the *Reid* case. Smith & Nephew believes that the proper ruling is that this motion should be granted and that Federal be prohibited from offering any evidence of Smith & Nephew's assertion of privilege, and from making or eliciting any reference to Smith & Nephew's assertion of privilege, whether in opening statement, closing argument, questions to witnesses, reference to any document, or otherwise, and that Federal be directed to advise all of its witnesses of the existence of this preclusion order and of their duty to abide by its terms.

On August 25, 2005 Magistrate Judge Anderson issued an order denying Federal's motion to compel, finding it undisputed that Smith & Nephew had not expressly waived the applicable privileges and holding that Smith & Nephew had not impliedly waived any applicable privilege. (Doc. 97 at 5.) Federal made no objection to Magistrate Judge Anderson's Order. That Order establishes that Smith & Nephew's claims of privilege in this case have been entirely proper. To permit Federal nevertheless to cite Smith & Nephew's assertion of privilege as somehow unfair, or as justifying an inference that the privileged material would not support Smith & Nephew's case, would eviscerate the protection the attorney-client privilege and work product immunity provide, confronting Smith & Nephew with a choice of either waiving the

privileges, and thus losing their protection, or asserting them, but paying a heavy price for having done so. The authorities do not call for, and in fact abhor such a result.

Furthermore, Tennessee case law regarding "missing witness" jury instructions indicates that a Tennessee court would grant the relief Smith & Nephew seeks herein to preserve the privileges, and would refuse to give the "missing witness" instruction Federal seeks. Specifically, in *State v. Murrell*, No. W2001-02279-CCA-R3-CD, 2003 WL 21644591 (Tenn. Crim. App. July 2, 2003), the court discussed the propriety of a "missing witness" jury instruction. The justification for giving a "missing witness" jury instruction "is that if a party can offer no good reason for failing to call a material witness who ostensibly would be disposed to favor that party, a logical inference arises that the witness' testimony would be unfavorable to the party." *Murrell*, 2003 WL 21644591 at *3. This justification is absent, however, when testimony is unavailable due to the exercise of a privilege. The *Murrell* court found it was inappropriate to give a missing witness instruction when the state failed to produce a confidential informant. As the court explained:

> When an informant's identity is kept secret however, because of the common law privilege discussed earlier, the state has a good reason for not calling the witness, *i.e.* the exercise of the state's privilege. Under these circumstances the giving of an "absent material witness" instruction would be misleading to the jury and undercut the fact finding process.

*Id.* The *Murrell* court concluded that "the state was privileged not to call the informant as a witness and ***should not be penalized for exercising that privilege*** through a misleading absent witness instruction." *Id.* (emphasis added). As in *Murrell*, Smith & Nephew should not be penalized for properly exercising its attorney-client privilege and work product protection. Consequently, Federal should not be permitted to introduce, or make or elicit any reference to, Smith & Nephew's assertion of the attorney-client privilege or work product doctrine, as any

such comment could mislead the jury into drawing a negative (and unjustified) inference that the withheld information does not support the reasonableness of Smith & Nephew's defense costs or settlement payment.

### Defendant's Statement

Federal opposes this motion in limine. The motion should be denied.

The plaintiff seeks damages in this action including over $900,000 in attorneys' fees and costs which it claims it incurred defending the underlying *Reid* lawsuit. Notwithstanding the enormous amount of attorneys' fees and expenses claimed, Smith & Nephew has withheld and refused to produce thousands of pages of documents which it claims are the product of work performed by its attorneys for which it now seeks compensation from Federal. Since the day this lawsuit was filed, Federal has questioned the reasonableness and necessity of the amount of attorneys' fees and expenses claimed by Smith & Nephew and has sought to discover evidence which confirms or contradicts the amounts claimed. Because the amount of, as well as the reasonableness and necessity of, defense costs claimed are directly in issue, Federal submits that plaintiff's failure to produce the documents in question is a matter that the jury should be permitted to consider.

In *Boyd v. Boyd*, 680 S.W.2d 462 (Tenn. 1984), the Supreme Court of Tennessee held that the trial court properly charged the "missing witness" rule with respect to a party's failure to call a witness, its counsel, who was only available to the party who had refused to produce the witness. The Supreme Court noted that the attorney was a material witness to some of the events surrounding discovery and by his own actions placed himself in the position of being a witness, a fact apparent long before trial.

In the present case, Smith & Nephew has withheld hundreds, if not thousands, of documents which are otherwise unavailable to Federal on privilege grounds. The documents in question ostensibly would support Smith & Nephew's claims. Under the circumstances, charging the "missing witness" jury instruction is appropriate. Smith & Nephew has effectively placed the documents beyond the reach of Federal and prevented Federal from discovery of the very documents which Smith & Nephew seeks to have Federal pay for. Refusing to allow Federal to point out the fact that Smith & Nephew has withheld documents which would support its claim which are available only to Smith & Nephew, would be both unfair and unduly prejudicial to Federal.

Finally Federal submits that the privilege log is admissible on the issue of reasonableness and necessity of attorney's fees. Plaintiff's expert has opined that all fees and expenses claimed in this matter are reasonable and necessary. However, the expert admitted that he has never seen the thousands of documents withheld which are matters he purports to testify about. Federal should be permitted to cross examine the witness regarding the lack of factual basis for his opinions.

### Defendant's Motions:

3.1B    Defendant's Motion in Limine Regarding Pre-Judgment Interest

Federal has filed a motion in limine requesting that the Court deny plaintiff's claims for pre-judgment interest. Under Tennessee law, the common law power to award pre-judgment interest has consistently been viewed as an equitable matter entrusted to the Judge's discretion. Tennessee's pre-judgment interest statute, T.C.A. § 47-14-123, has consistently been construed to preserve the discretionary character of discretionary court's awards.

The appellate courts of Tennessee have also consistently held that a court must keep in mind that the purpose of awarding interest is to fully compensate a plaintiff for the loss of use of funds to which he or she was legally entitled, not to penalize the defendant for wrong doing. *Myint v. Allstate Ins. Co.*, 970 S.W.2d at 927.  In determining whether or not to allow claims for pre-judgment interest, the Courts have routinely considered various factors including factors which are important in this case:  1) certainty regarding the existence of a debt or obligation; 2) certainty regarding the amount of an obligation; and 3) whether the party seeking pre-judgment interest has been diligent or dilatory in pursuing a claim.

Applying these factors to the facts of the present case, an award of pre-judgment interest would be inequitable.  The following facts are undisputed:

1.      The *Reid* lawsuit was filed on February 28, 1997.

2.      Smith & Nephew first notified Federal of the *Reid* lawsuit in April, 1999, more than two years after the case was filed.

3.      During the more than two-year period that elapsed between the filing of the *Reid* suit and Smith & Nephew's notification to Federal, Smith & Nephew voluntarily incurred slightly under $400,000 in attorneys' fees and costs while repeatedly representing to the U.S. District Court in Texas and plaintiff's counsel that there was no insurance available for the plaintiff's claims.

4.      After being notified of the *Reid* lawsuit and Smith & Nephew's demand for defense and indemnity in April, 1999, Federal promptly considered Smith & Nephew's request, sought advice of counsel, and determined that there was no coverage available under the policies for the claims asserted by *Reid*, notifying Smith & Nephew of its decision in June, 1999.

5.      Although Federal denied Smith & Nephew's demand for defense and indemnity in June, 1999, the present lawsuit was not filed until June, <u>2002</u>, three years after Federal denied coverage.  Smith & Nephew has offered no explanation for its three-year delay in filing this suit, to date.

6.      Approximately six months after being served with the present lawsuit, Federal promptly filed a motion for summary judgment on the issue of coverage on January 10, 2003.

7.      By order dated August 21, 2003, this Court granted the defendant's motion for summary judgment, agreeing that there was no coverage under the policy and consequently no duty to defend or indemnify Smith & Nephew in the *Reid* matter.

8.      Smith & Nephew appealed this Court's decision to the Sixth Circuit Court of Appeals, which reversed this Court's summary judgment ruling by Order and Opinion dated October 13, 2004.

9.      Since the time the case was remanded to this Court, Federal has made every reasonable effort to comply with all of the deadlines which have been imposed by the Court and has made diligent efforts to resolve all matters in controversy.

10.      The undisputed facts set forth above establish that for at least five years (2/97-4/99; 6/99-6/02) of the eight years which have passed since the filing of the *Reid* lawsuit, Smith & Nephew made no effort to pursue any claims against Federal.

The facts set forth above also demonstrate that the question of whether Federal owed any duty to defend or indemnify Smith & Nephew under the policy was a matter which was clearly subject to dispute on reasonable grounds and a matter about which reasonable minds clearly differed.

Federal submits that the facts set forth above suggests that the Court should exercise its discretion and decline the plaintiff's claim for pre-judgment interest.

### Plaintiff's Statement

Because the deadline for the parties to file motions in limine was the same as the deadline for submission of this proposed pre-trial order, Smith & Nephew reserves the right to respond more fully to this motion during or, if feasible, before the Pre-Trial Conference scheduled for December 13, 2005.

Based solely on the description provided above, Smith & Nephew responds as follows:

Smith & Nephew agrees that an award of prejudgment interest is discretionary, but notes that, according to the express wording of T.C.A. § 47-14-123, interest may be awarded by the court or by the jury.  Smith & Nephew will brief separately the question of the application of factors identified in the case law as bearing upon such an exercise of discretion.

Smith & Nephew disagrees with Federal's statement of the facts relevant to whether prejudgment interest should be awarded in this case.  First, Smith & Nephew agrees that the timing of its notification of Federal with regard to the Reid suit should have an impact on the interest award.  Specifically, Smith & Nephew seeks prejudgment interest only from the date the costs were paid or the date Federal was notified, whichever is *later*.  Thus, Federal would pay no interest related to the passage of time before it was asked to defend this case.

Second, Smith & Nephew did not delay unreasonably in filing this case.  If the Court were to find such an inquiry relevant, Smith & Nephew would show that, after Federal denied coverage, Smith & Nephew made several submissions to Federal urging that Federal reverse its position, and that such discussions continued well into 2001.  Moreover, Smith & Nephew acted in the meantime to mitigate its damages by securing a $250,000 payment from another insurer on

account of its settlement of the Reid case.  In any event, Smith & Nephew lost the use of the funds in question due to Federal's wrongful denial of its coverage obligations.  It was always in Federal's power to reverse its position and cut off the running of interest by making payment, which Federal has staunchly refused to do.

Finally, Smith & Nephew disagrees with Federal's assertion that it has conducted itself in this litigation in good faith.  If the Court were to find such an inquiry relevant, Smith & Nephew would show that Federal, in its internal communications, in fact recognized its duty to defend the Reid lawsuit under the Original Complaint, but nevertheless took a precisely contrary position in this litigation.  Smith & Nephew would show further that Federal has taken the position that the Reid case could have been successfully defended for $23,500, in spite of the fact that counsel it retained for advice relative to Smith & Nephew's coverage claim warned Federal that the Reid case was serious and held the potential for a significant jury verdict.

Smith & Nephew submits that, even if Federal's position was plausible, that should have no effect on whether Smith & Nephew receives an award of prejudgment interest.  The fact remains that Smith & Nephew has been denied the use of the funds, to its damage, because of Federal's wrongful refusal to provide coverage.  To refuse to award prejudgment interest simply because there exists a tenable, albeit ultimately unmeritorious basis to refuse performance under a contract would encourage parties to breach their contracts if their excuse for nonperformance "passes a red face test" solely for the purpose of holding onto and using their money for as long as possible.  Such a result make no sense and is grossly inequitable.

3.2B    Defendant's Motion in Limine Regarding Summary Judgment Order in *Reid* Lawsuit.

The defendant adopts its statement set forth in above in Section 3.1A and the motion in limine which it has filed on this issue.

### Plaintiff's Statement

Because the deadline for the parties to file motions in limine was the same as the deadline for submission of this proposed pre-trial order, Smith & Nephew reserves the right to respond more fully to this motion during or, if feasible, before the Pre-Trial Conference scheduled for December 13, 2005.

Smith & Nephew is unable to discern what relief this motion seeks, or on what basis, from Federal's statement above.  To the extent relevant, Smith & Nephew adopts its statement above in Section 3.1A.

3.3B    Defendant's Motion for Clarification

The defendant has requested that the Court clarify its Opinion and Order on the parties' motions for summary judgment dated November 23, 2005.  Federal respectfully believes that the Court's opinion does not address one of the two grounds raised in Federal's motion for summary judgment – whether plaintiff is entitled to recover fees and expenses incurred prior to the time plaintiff notified defendant of the underlying *Reid* lawsuit.  Federal believes that the law of the State of Tennessee as well as the State of Texas prohibit an insured from recovering pre-tender costs and expenses from an insurance carrier regardless of the existence of coverage or the absence of prejudice to the carrier.

**Plaintiff's Statement**

Because this motion was filed together with defendant's motions in limine, and the deadline for the parties to file motions in limine was the same as the deadline for submission of this proposed pre-trial order, Smith & Nephew reserves the right to respond more fully to this motion during or, if feasible, before the Pre-Trial Conference scheduled for December 13, 2005.

Based solely on the description provided above, Smith & Nephew responds as follows:

Federal's motion for summary judgment on the "late notice" issue expressly requested "a judgment as a matter of law that plaintiff is not entitled to recover any fees or expenses incurred before plaintiff notified defendant of the underlying *Reid* lawsuit." Its supporting memorandum argued this issue at some length. The motion was denied. It would appear, therefore, that this issue has been decided.

Moreover, the denial of the requested ruling comports with the holding of the Sixth Circuit Court of Appeals that Federal had a duty to defend under the Original Complaint in *Reid* and with the logic of this Court's opinion on the cross-motions for summary judgment. The Court denied Federal's motion and granted Smith & Nephew's motion in part on the basis that Federal would have denied Smith & Nephew's coverage claim irrespective of when notice was given. (Paper No. 120 at 10-11.) Courts that have drawn such a conclusion do not excuse insurers from paying pre-tender costs. For example, in *Sherwood Brands v. Hartford Accident & Indemnity Co.*, 698 A.2d 1078 (Md. 1997), the Court rejected the position advocated by Federal here, finding the timing of notice irrelevant to whether or not the insurer should be liable for pre-notice costs:

> If the delay in giving notice is not a factor in the insurer's decision not to defend—if it would have declined the defense in any event based on its mistaken conclusion that there was no potential coverage—the insurer should not later be allowed to use the delay

> as a bar to reimbursing the insured for the reasonable expenses
> incurred in defending the covered claim.

*Sherwood Brands*, 698 A.2d at 1086-87.  As this Court has found, Federal believed the *Reid* suit was excluded from the policy coverage and would never have defended the Reid suit.

Finally, Tennessee law does not support Federal's position.  As this Court has noted, the Tennessee courts recently have held that breach of a notice provision "will result in forfeiture of an insurance policy only where prejudice to the insurer is shown."  (Doc. 120 at 7, citing *Alcazar v. Hayes*, 982 S.W.2d  845, 856 (Tenn. 1998).)  The only Tennessee case Federal has cited on this issue is *Buquo v. Title Guaranty & Trust Co.*, 100 S.W.2d 997 (Tenn. App. 1936), which was decided some 52 years before *Alcazar*.  In *Buquo*, the insured never provided written notice of suit to the insurer.  *Id.* at 999.  The insured did inform the insurer orally of the suit when it was filed, but *never* requested that the insurer defend the action.  *Id.*  The court determined that the insured had elected to defend the action himself rather than have the insurer provide a defense. *Id.*  Under these circumstances, the court found that the insured had waived his right to recover the expenses incurred in defending the action.  *Id.*  By contrast, it is undisputed that Smith & Nephew did provide Federal with notice of the *Reid* suit once it realized that there might be coverage under the insurance policy and formally requested that Federal provide a defense. Smith & Nephew therefore cannot be found to have waived its right to have Federal provide a defense. *See generally Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003) ("'[a] waiver is a voluntary relinquishment by a party of a known right'").  Thus, *Buquo* is inapplicable.

3.4B    Defendant's Motion in Limine Regarding Expenses Claimed in the *Reid* Lawsuit

Federal has filed a motion in limine to prohibit Smith & Nephew from offering any proof of the expert expenses it claims to have incurred in the *Reid* matter.  The grounds for this motion

are that in order to recover expenses incurred in defending the *Reid* litigation, Smith & Nephew must prove the expenses it incurred were both reasonable and necessary by expert testimony.

Smith & Nephew has failed to disclose any competent proof from any expert who is qualified to offer opinion testimony that the expenses in question were either reasonable or necessary.  While Smith & Nephew has disclosed a Rule 26 expert witness who is expected to testify concerning "defense costs," Federal submits that the witness, an attorney, is not qualified to offer opinion testimony concerning the reasonableness and necessity of the charges of other experts, including economists, psychiatrists, and various medical professionals who provided services in connection with the *Reid* lawsuit other than attorneys.  Federal submits further that there is an inadequate factual basis for this expert's testimony concerning Smith & Nephew's expenses.  Specifically, the bills of the various experts are inadmissible hearsay.

Federal relies further on its motion in limine on this subject filed in accordance with the Court's Order of September 2, 2005.

### Plaintiff's Statement

Because the deadline for the parties to file motions in limine was the same as the deadline for submission of this proposed pre-trial order, Smith & Nephew reserves the right to respond more fully to this motion during or, if feasible, before the Pre-Trial Conference scheduled for December 13, 2005.

Based solely on the description provided above, Smith & Nephew responds as follows:

Smith & Nephew will oppose this motion on the ground that, upon a proper foundation, an attorney with relevant experience certainly can give an expert opinion as to the reasonableness of expert witness fees.  Attorneys are relied upon by clients to select and supervise trial experts and to assure the reasonableness of their charges.  An experienced attorney is asked to serve this

function in most cases involving expert testimony. Smith & Nephew will lay the necessary foundation for the testimony it offers on this topic. This is not the type of matter that can be decided in advance on a motion in limine.

The experts' bills are not hearsay insofar as they are offered to show what charges were presented to Smith & Nephew and its counsel. In this respect they are "verbal acts" and do not meet the hearsay definition set forth in Fed.R.Evid. 801. Further, insofar as the bills are offered to show what the experts did (an issue on which Smith & Nephew intends to offer other evidence, as well) they fall within Fed.R.Evid. 803(6), as business records.

### 4. Summary of the Case

The parties submit the following "short summary of the case that may be read to the venire at the beginning of voir dire":

This is a lawsuit between two companies. The company making the claim is called Smith & Nephew, Inc. Smith & Nephew is a maker of medical devices and is headquartered here in Memphis, Tennessee. Smith & Nephew is a subsidiary of Smith & Nephew, plc, a publicly-owned company chartered in Great Britain. The company against whom Smith & Nephew is making its claim is Federal Insurance Company. As the name suggests, Federal is an insurance company. Federal is a member of the Chubb group of insurance companies and is headquartered in New Jersey.

The kind of insurance we are dealing with in this case is liability insurance. Smith & Nephew has claimed that Federal was required under liability insurance policies it issued to Smith & Nephew to pay for Smith & Nephew's defense of a lawsuit brought against Smith & Nephew by an army surgeon named Mary Reid. Smith & Nephew also says that Federal was required under its policy to pay for Smith & Nephew's settlement of Reid's lawsuit.

It has already been decided that Smith & Nephew was entitled to coverage. This trial will be about the question of how much of Smith & Nephew's defense costs and settlement payment in the *Reid* lawsuit Federal should be required to pay. Federal contends that Smith & Nephew's defense costs and settlement payment were both unreasonably and unnecessarily high.

## 5. Contentions of the Parties

The respective contentions of the parties are as follows:

### Plaintiff's Contentions

Plaintiff contends that the defense costs incurred by Smith & Nephew in defense of the *Reid* lawsuit were reasonable. Given the uniqueness of the questions of law that were presented in the *Reid* lawsuit, and the gravity of the damages claimed by Reid, it would have been unreasonable not to have carefully prepared and presented every available motion which had any reasonable chance of success. Smith & Nephew also needed to retain its expert witnesses so that it would be prepared to respond to the experts retained by Reid and to properly attack Reid's claims in the event that the case went to a trial on the merits. Reid's attorneys engaged in a tenacious attack during the underlying litigation, necessitating Smith & Nephew's equally tenacious defense. Given the uniqueness of the questions of law presented, the gravity of the damages claimed by Reid, the necessity to retain expert witnesses to rebut Reid's experts and challenge her claims, and the need to respond to the voluminous paper produced and tenacious litigation strategy employed by Reid's attorneys, the defense costs incurred by Smith & Nephew in defending the *Reid* lawsuit were reasonable.

Plaintiff contends that the settlement of the *Reid* lawsuit for $500,000 was reasonable. It is inherently impossible to predict to any degree the certainty of the outcome of a trial. Given that the *Reid* lawsuit alleged the destruction of both Mary Reid's career as a doctor and her

personal life, the damages to Ms. Reid if the jury found in her favor were massive.  Thus, Smith
& Nephew's potential exposure was enormous.  Furthermore, Mary Reid was a bright young
doctor with a very promising career, and the jury's sympathies probably would have been
favorable to her.  Given the impossibility of predicting the outcome at trial, the enormous
potential exposure Smith & Nephew faced, the likely jury sympathies in favor of Reid, and the
enormous defense costs that would have been incurred trying the case and the almost inevitable
appeal of the decision, Smith & Nephew contends that settling the *Reid* litigation for $500,000
was reasonable.

Plaintiff contends that it is entitled to the full 10% prejudgment interest amount allowed
by statute, Tenn. Code Ann. § 47-14-123, because the true measure of damages to Smith &
Nephew for the deprivation of funds to which it was entitled under the policies would have been
Smith & Nephew's internal rate of return during the relevant period.  Evidence will show that
Smith & Nephew's internal rate of return was well in excess of 10%.

Plaintiff contends that there is a rebuttable presumption in favor of the insured that the
settlement is reasonable, placing the burden on the defendant to show that the settlement was
unreasonable.  Plaintiff also contends that when assessing the reasonableness of Smith &
Nephew's defense costs, "reasonable" is not the same as the best possible outcome or lowest
possible cost.  Rather, what is "reasonable" is a range that should be assessed in accordance with
the factors outlined in *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980) and in Tenn.
S.Ct. R. 8, DR 2-106(B).

**Defendant's Contentions**

The *Reid* lawsuit was filed against Smith & Nephew in January, 1997.  Reid was a
medical doctor and orthopedic surgeon who was assigned to Brook Army Medical Center

beginning in 1993.  Reid alleged that Smith & Nephew and other defendants had conspired to
violate the Procurement Integrity Act, 41 U.S.C. § 423.  Specifically, Reid alleged that Smith &
Nephew and the other defendants had improperly provided payments, gifts and other things of
value such as trips to her superior officeR, Col. Allan Bucknell, in an effort to induce Bucknell
and others as Brook Army Medical Center to influence and determine the procurement of
property and services from Smith & Nephew.

Reid alleged further that the conspiracy between Bucknell and Smith & Nephew and the
other defendants resulted in a number of Overt acts designed to injure Reid in her person and her
property to deter her from continuing the lawful performance of her duties.  Smith & Nephew
was represented by the largest law firm in Texas, Akin Gump Strauss Hauer and Feld, LLP, of
San Antonio, the firm of Sidley & Austin of Chicago, IL, and Jean Mercer, Esq., in-house
counsel for Smith & Nephew, Inc. in Memphis.  Smith & Nephew believed throughout the *Reid*
case that Reid's claims had no basis in fact or law and that Smith & Nephew would ultimately
prevail on the legal issues and merits of the case.  At one point during the course of the *Reid*
litigation, Smith & Nephew filed a motion for sanctions against Reid claiming that none of the
claims that Reid had asserted against Smith & Nephew had any basis in fact or law.

Smith & Nephew's attorneys also recognized that in addition to the absence of any
factual or legal basis for any of the claims which Reid asserted, Smith & Nephew also had a
valid statute of limitations defense to Reid's claims.  Despite this fact, Smith & Nephew's
attorneys did not attempt to have the *Reid* case dismissed based upon the statute of limitations
until over two years after the lawsuit was filed.  During the two-year period between the time the
lawsuit was filed and the filing of the statute of limitations motion, Smith & Nephew voluntarily
incurred hundreds of thousands of dollars in attorneys' fees.

Between the time it was initially sued by Reid in 1997 and April, 1999, Smith & Nephew made no effort to notify Federal of the *Reid* lawsuit and continuously represented to Reid, her attorneys, and the U.S. District Court for the Western District of Texas in San Antonio that there was no insurance coverage for Reid's claims.

On May 3, 1999, over two years after the *Reid* lawsuit was filed, Smith & Nephew finally filed a motion for summary judgment in the *Reid* lawsuit alleging, in part, that the applicable statute of limitations barred Reid's claims.

After the motion for summary judgment was filed, and despite Smith & Nephew's beliefs regarding the strengths of its case and the pending motion for summary judgment on the statute of limitations, Smith & Nephew voluntarily agreed to settle all of Reid's claims, not only against Smith & Nephew, but against all other defendants in the case based, in part, on a payment of $500,000, half of which is sought in this matter.  The other defendants did not contribute any sum to the settlement payment.  Half of the settlement payment came from another liability insurance carrier which provided insurance for Smith & Nephew.  From the time suit was filed in 1997 until February 2000, Smith & Nephew made no offers to settle the *Reid* case.

The rates charged by the attorneys hired by Smith & Nephew were greatly in excess of rates charged by attorneys who perform similar work in the same area.  Similarly, a large percentage of the hours claimed to have been devoted to the defense of the *Reid* matter by Smith & Nephew's attorneys cannot be documented.  Numerous documents which Smith & Nephew now seeks reimbursement for from Federal either cannot, or have not, been produced by Smith & Nephew.

Although the U.S. Court of Appeals for the Sixth Circuit in Cincinnati, OH, has ruled that the policy in question obligated Federal to provide a defense and indemnity for Smith & Nephew

in the *Reid* matter, Federal believes that its obligations and duties under the policy are and were subject to reasonable dispute as evidenced by, among other things, the fact that summary judgment was granted in favor of Federal by this Court in August, 2003.  Likewise, Federal believes that the amount claimed by Smith & Nephew is excessive and that Smith & Nephew unduly delayed notifying Federal of the *Reid* suit and unduly delayed seeking a resolution of the claims which it had against Federal after the claim was denied.  For these reasons, Smith & Nephew is not entitled to pre-judgment interest.

### 6.  Statement of Uncontested Facts

The parties hereby submit the following statement of undisputed facts:

Federal Insurance Company issued Smith & Nephew a commercial general liability insurance policy bearing the Policy Number 7320-97-63, effective from April 1, 1993 to September 1, 1994.  Federal then issued Smith & Nephew a second commercial general liability insurance policy, also bearing the Policy Number 7320-97-63, effective from September 1, 1994 to September 30, 1995.  Under these policies, Federal agreed to defend suits against Smith & Nephew to which the insurance applied.

In 1997, Lt. Col. Mary E. Reid, a former military surgeon, filed a lawsuit against Smith & Nephew in Texas.  In her lawsuit, Reid alleged that Smith & Nephew and others had conspired to discredit Reid and destroy her reputation by, among other things, making defamatory statements regarding her surgical skills and integrity.

In defending itself in the *Reid* lawsuit, Smith & Nephew claims it paid $777,867.09 in attorneys' fees and expenses to its attorneys Akin Gump Strauss Hauer & Feld LLP.  Smith & Nephew also claims it paid $129,213.29 in expert witness fees.

Smith & Nephew settled the *Reid* lawsuit for $500,000 in February, 2000. Smith & Nephew is requesting that Federal partially reimburse the settlement. After entering into the settlement agreement with Reid, Smith & Nephew received a payment of $250,000 from another insurance company which insured Smith & Nephew. Smith & Nephew is seeking to have Federal pay for $250,000 of the *Reid* settlement.

### 7.  Contested Issues of Fact

Contested issues of fact are as follows:

7.1     To the extent that any disputed issue identified in this section is deemed to be an issue of law, in whole or in part, it shall nonetheless be deemed properly advanced in this Joint Pretrial Order.

7.2     Whether the defense costs, expenses and expert witness fees actually incurred by Smith & Nephew in defending the *Reid* lawsuit are recoverable.

7.3     If Smith & Nephew's defense costs, expenses and expert witness fees were not reasonable, what would have been a reasonable amount of defense costs, expenses and expert witness fees for defending the *Reid* lawsuit.

7.4     Whether the $500,000 settlement payment in the *Reid* lawsuit was reasonable.

7.5     If the $500,000 settlement payment was not reasonable, what would have been a reasonable payment to settle the *Reid* lawsuit.

7.6     Whether prejudgment interest is appropriate in this case.

7.7     What is the appropriate prejudgment interest rate, if any, to be applied to Smith & Nephew's recovery in this case.

### 8.  Contested Issues of Law

Contested issues of law are as follows:

8.1     To the extent that any disputed issues identified in this section is deemed to be an issue of fact, in whole or in part, it shall nonetheless be deemed properly advanced in this Joint Pretrial Order.

8.2     Whether the subject defense costs are recoverable if they were "reasonable," as Smith & Nephew contends, or only if they were both "reasonable and necessary," as Federal contends.

8.3     Whether Smith & Nephew is entitled to pre-judgment interest as a matter of law.

8.4     What is the appropriate time period, if any, for which interest should be awarded.

## 9. Exhibits

A list of exhibits (except documents for impeachment only) to be offered in evidence by the parties, with objections thereto by the opposing party, is provided as to plaintiff in Exhibit A-1 (plaintiff's list and defendant's response, combined) and as to defendant in Exhibits A-2 (defendant's amended pre-trial disclosures) and A-3 (plaintiff's response).

In addition, Plaintiff lists the following excerpts which Smith & Nephew may read to the jury if the need arises, and summaries of other evidence which may be offered at trial if the need arises:

### Plaintiff's Items to Be Read to the Jury (not necessarily to be offered as exhibits):

The following items are excerpts which Smith & Nephew may read to the jury if the need arises:

1)     Defendant Federal Insurance Company's Responses to Plaintiff Smith & Nephew's First Set of Interrogatories, served on November 12, 2002, Interrogatory No. 3 and Federal's Response. (Doc. 27.)

2)     Defendant Federal Insurance Company's Answers to Plaintiff Smith & Nephew's Interrogatories, served on March 8, 2005, Interrogatory No. 4 and Federal's Response.

3)      Excerpt from page 9 of Federal Insurance Company's Memorandum in Support of Motion for Summary Judgment, served on January 10, 2003 (Doc. 16).  Excerpt which may be offered:

- "it is clear that Lt. Col. Reid's original complaint and amended complaint are both completely devoid of allegations which even potentially fall within the insuring agreements" (Page 9.)

**Defendant's Objections:**

The defendant objects to the "Items to be Read to the Jury" on the grounds that each item

is irrelevant in light of the Court's ruling on the parties' motions for summary judgment

dated November 23, 2005.

**Plaintiff's Summaries of Other Evidence:**

The following summaries of other evidence may be offered at trial if the need arises:

1)      Summary of Akin Gump fees and disbursements from *Lt. Col. Mary E. Reid v. Terry Geurink, T.G. Medical, Inc. and Smith & Nephew Richard, Inc.*, USDC, Western District of Texas, San Antonio Division, Case No. SA97-CA-0268

2)      Summary of expert witness fees incurred in Smith & Nephew's defense during *Lt. Col. Mary E. Reid v. Terry Geurink, T.G. Medical, Inc. and Smith & Nephew Richard, Inc.*, USDC, Western District of Texas, San Antonio Division, Case No. SA97-CA-0268

3)      Summary of litigation events and document productions from *Lt. Col. Mary E. Reid v. Terry Geurink, T.G. Medical, Inc. and Smith & Nephew Richard, Inc.*, USDC, Western District of Texas, San Antonio Division, Case No. SA97-CA-0268

4)      Summary of Smith & Nephew, Inc. Financial Information, 1998-2004

**Defendant's Objections:**

The defendant objects to items 3-4 of the plaintiff's "Summaries of Other Evidence" on

the grounds that the summaries are inadmissible hearsay (Rules 801, 802, F.R.E.) and

that there is no competent proof of the reasonableness and necessity of expenses claimed.

## 10.  Witnesses

### A.     Plaintiff's Witnesses

Smith & Nephew expects to present the following witnesses at trial:

1)     R. Lawrence Macon, Esq.
       Akin Gump Strauss Hauer & Feld LLP
       300 Convent Street
       Suite 1500
       San Antonio, TX  78205
       210-281-7000

       **Defendant's Objection(s):**  No objection.

2)     Jean W. Mercer, Esq.
       Associate General Counsel
       Smith & Nephew, Inc.
       1450 Brooks Road
       Memphis, TN 38116
       901-399-6090

       **Defendant's Objection(s):**  No objection.

3)     Michael J. O'Connor
       Senior Vice President, Finance
       Smith & Nephew, Inc.
       1450 Brooks Road
       Memphis, TN 38116
       901-399-6090

       **Defendant's Objection(s):**  No objection.

4)     S. Mark Murray, Esquire
       Law Office of S. Mark Murray, Inc.
       2818 Nacogdoches Road
       San Antonio, Texas 78217
       210-224-1800

       **Expert Witness Testimony:**  Mr. Murray is expected to offer expert testimony on the
       following subject matters:  (1) the necessity of the actions taken by Akin Gump Strauss
       Hauer & Feld LLP in the defense of Smith & Nephew in the *Reid* lawsuit; (2) the
       reasonableness of the defense costs incurred by Smith & Nephew in the *Reid* lawsuit;
       and (3) the reasonableness of the settlement payment made by Smith & Nephew in the
       *Reid* lawsuit.

**Defendant's Objection(s):** The defendant objects to the witness's testimony to the extent he will testify concerning expenses of experts in specialties other than the practice of law. Federal submits that the witness is not qualified to offer opinion testimony concerning the reasonableness and necessity of experts utilized in the *Reid* matter and that there is an insufficient factual basis for any testimony from the witness on this subject matter.

**B.     Defendant's Witnesses**

Federal is expected to present the following witnesses at trial:

1)     Diane Wood
       1330 Post Oak Boulevard, Suite 2400
       Houston, TX  77056

       **Plaintiff's Objection(s):** No objection.

2)     David Chamberlain, Esq.
       301 Congress Ave., 21st Floor
       Austin, TX  78701

       **Expert Witness Testimony:** Mr. Chamberlain is an attorney who maintains offices in Austin, TX and San Antonio, TX.  Mr. Chamberlain is expected to offer expert testimony on the following subject matters:

       1.     The attorneys' fees and expenses claimed by Smith & Nephew in the defense of the underlying *Reid* suit.

       2.     The number of hours expended by the Smith & Nephew's attorneys in the *Reid* lawsuit.

       3.     The reasonableness and necessity of the services and fees performed by Smith & Nephew's attorneys.

       4.     The timing of the filing of motions and other pertinent actions taken by Smith & Nephew's attorneys in the *Reid* lawsuit.

       5.     The reasonableness and necessity of the settlement payment made by Smith & Nephew in the *Reid* lawsuit.

       **Objections:** Smith & Nephew objects to Mr. Chamberlain offering the opinion that the

underlying *Reid* lawsuit could have been successfully defended at a cost of $23,500.00 or less

had Smith & Nephew promptly sought summary judgment on a statute of limitations defense.

This opinion, the analysis underlying the opinion or any testimony predicated upon it (the

"Chamberlain opinions") should be excluded from evidence because they lack a reliable basis in law. The Chamberlain opinions are unreliable because they are based upon an incorrect legal premise; namely, that Reid's cause of action for civil conspiracy (under 42 U.S.C. § 1985) accrued as to *all* overt acts comprising the alleged conspiracy at the time Reid first learned that she had been harmed by *any* overt act. To the contrary, established federal case law holds that the statute of limitations in a civil action for conspiracy runs separately for each overt act that is alleged to cause damage to the plaintiff. Because this faulty legal premise renders the Chamberlain opinions unreliable, this Court should exercise its "gatekeeper" powers to exclude them.

The Chamberlain opinions also should be excluded as improperly encroaching upon the function of this Court to instruct the jury with respect to the law. It is beyond the proper role of an expert witness to tell the jury what the law is, or to tell the jury how a dispositive motion would have been decided "as a matter of law" in another case.

Smith & Nephew's objections to the Chamberlain opinions and legal arguments for excluding them from evidence are stated in greater detail in the Memorandum in Support of Plaintiff Smith & Nephew, Inc.'s Motion in Limine Regarding Expert Opinion on the Law, filed on November 23, 2005.

Smith & Nephew also objects to Chamberlain testifying as an expert witness on the grounds that an attorney that works in the Austin, Texas legal market cannot testify as to what would be a reasonable attorney's fee in the San Antonio, Texas legal market.

3)     Gregory K. Faulk, Ph.D.
       Belmont University
       Nashville, TN 37212

       **Expert Testimony:** Mr. Faulk is expected to offer expert testimony on the following subject matters: Mr. Faulk is a professor at the Jack C. Massey Graduate School of

Business, Belmont University in Nashville, TN. Mr. Faulk has reviewed relevant academic and government resources regarding pre-judgment interest and is expected to offer expert testimony concerning the appropriate amount of pre-judgment interest and the basis for calculation of pre-judgment interest in this matter.

**Plaintiff's Objection(s):** Smith & Nephew objects to Mr. Faulk's testimony as irrelevant because it does not purport to measure the financial impact to Smith & Nephew of the loss of use of the funds wrongfully withheld by Federal. The question of how others, including Federal, might have invested the funds is immaterial to the use value of those funds to Smith & Nephew.

### 11. Deposition Testimony

The designations of the relevant portions of deposition testimony that may be read at trial by plaintiff, and defendant's objections thereto, if any, are as follow:

1)      Deposition Transcript of Bonnie Diane Wood, June 14, 2005.

| From (Page : Line) | To (Page : Line) | Objection(s) |
|---|---|---|
| 3:23 | 3:24 | *All set forth below |
| 5:20 | 6:5 | |
| 6:19 | 7:8 | |
| 8:25 | 9:4 | |
| 9:10 | 9:19 | |
| 10:7 | 11:11 | |
| 13:2 | 14:21 | |
| 27:7 | 30:3 | |
| 30:9 | 31:2 | |
| *31:3* | *31:19 (NEW)* | |
| *32:15* | *34:6 (NEW)* | |

| From (Page : Line) | To (Page : Line) | Objection(s) |
|---|---|---|
| *35:2* | *35:21 (NEW)[1]* | |
| 39:1 | 39:15 | |
| 44:13 | 46:12 | |
| 46:24 | 47:7 | |
| 47:12 | 47:19 | |
| 48:9 | 48:13 | |
| 49:13 | 49:23 | |
| 51:8 | 51:18 | |
| 51:24 | 54:1 | |
| 54:4 | 54:14 | |
| 54:16 | 57:9 | |
| 58:14 | 59:1 | |
| 59:22 | 60:8 | |
| 61:3 | 63:12 | |

*The defendant objects to the "Items to be Read to the Jury" on the grounds that each item is irrelevant in light of the Court's ruling on the parties' motions for summary judgment dated November 23, 2005.

## 12. Length of Trial

The parties estimate that the trial shall last three (3) days.

---

[1] The deposition transcript designations of 31:3 – 31:19, 32:15 – 34:6, and 35:2 – 35:21 were not included in Plaintiff Smith & Nephew, Inc.'s Rule 26(a)(3) Disclosures served on November 21, 2005. These deposition transcript designations have been added in response to documents from Federal Insurance Company's Claim File for the *Reid* litigation, which Plaintiff's counsel did not receive until November 29, 2005.

## 13. Jury Trial

This case is a jury trial.

## 14. Damages

Smith & Nephew seeks an award of damages falling into two categories: (i) attorney's fees and expenses incurred in the defense of the Reid lawsuit; and (ii) sums paid in settlement of the Reid lawsuit.

### A.    Attorney's Fees and Expenses

Akin Gump Strauss Hauer & Feld LLP:                                       $777,867.09

### B.    Expert Witness Fees

Total Expert Witness Fees                                                  $129,213.29

### C.    Settlement Payment

Perry & Haas, Trustee for Mary E. Reid:                            $250,000.00[2]

Smith & Nephew's damages thus total **$1,157,080.38,** before addition of pre-judgment interest.  Smith & Nephew will seek to recover prejudgment interest calculated from the date each payment was made or the date of notice to Federal, whichever is later.

Federal denies that Smith & Nephew is entitled to the amounts claimed.

## 15. Attorneys

The attorneys for the Plaintiff are:

Martin C. Pentz (BBO # 394050)
FOLEY HOAG LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600

---

[2]  Smith & Nephew's payment to Perry & Haas, as Trustee for Mary E. Reid, in fact was in the amount of $500,000.00. Smith & Nephew has been partially reimbursed by another insurer for that payment, however, and seeks only the remaining, unreimbursed amount ($250,000.00), plus interest, from Federal.

(617) 832-1000

Mark Vorder-Bruegge, Jr.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120-4367
(901) 537-1069

The attorney for the Defendant is:

William B. Jakes, III
HOWELL & FISHER
300 James Robertson Pkwy
Nashville, TN  37201-1107
(615) 244-3370

## 16.  Special Equipment

None (one or both parties anticipate using the Court's ELMO and related equipment).


Respectfully submitted,


_____ FOR
Martin C. Pentz (BBO # 394050)
FOLEY HOAG LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA  02210-2600
(617) 832-1000

Mark Vorder-Bruegge, Jr.
WYATT, TARRANT & COMBS, LLP
1715 Aaron Brenner Drive, Suite 800
Memphis, TN  38120-4367
(901) 537-1069

ATTORNEYS FOR PLAINTIFF
SMITH & NEPHEW, INC.

Wm. B. Jakes by MVB by express permission
William B. Jakes, III
HOWELL & FISHER
300 James Robertson Pkwy
Nashville, TN  37201-1107
(615) 244-3370


ATTORNEYS FOR DEFENDANT
FEDERAL INSURANCE CO.

ORDER SIGNED 12/15/05

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 166 in
case 2:02-CV-02455 was distributed by fax, mail, or direct printing on
December 16, 2005 to the parties listed.

---

William B. Jakes
HOWELL & FISHER
300 James Robertson Pkwy
Nashville, TN 37201--110

Mark Vorder-Bruegge
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Martin C. Pentz
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210--260

Honorable J. Breen
US DISTRICT COURT