FILED BY ___ D.C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

05 DEC 19  AM 10: 45

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W.D OF TN, MEMPHIS

SMITH & NEPHEW, INC.,

     Plaintiff,

v.                                                  No. 02-2455 B

FEDERAL INSURANCE CO.,

     Defendant.

_____

## ORDER ON MOTIONS IN LIMINE

_____

This diversity action for declaratory judgment was brought by the Plaintiff, Smith and

Nephew, Inc. ("Smith and Nephew"), for a determination of its right to defense and indemnity under

a commercial general liability policy issued by Federal Insurance, Co. ("Federal") with respect to

claims brought against it in 1997 by Lt. Col. Mary E. Reid in the United States District Court for the

Western District of Texas.[1] On October 13, 2004, the United States Court of Appeals for the Sixth

Circuit entered an order finding that Federal was under a duty to defend Smith & Nephew in the

underlying action and remanding the case to this Court for a determination of whether the defense

costs and settlement payment incurred by the Plaintiff were reasonable. Both Plaintiff (Docket Nos.

123 & 125) and Defendant (Docket No. 149) have filed motions in limine which are now appropriate

for disposition.

### BACKGROUND

Because the motions considered herein all pertain to the procedural history of the underlying

_____

[1] See Reid v. Geurink, T.G. Medical, Inc. and Smith and Nephew Richards, Inc., No. SA-97-CA-0268,
(W.D. Tex. filed Feb. 28, 1997).

Reid litigation, a brief review of the facts is in order.  Reid named Smith & Nephew in an underlying action filed on February 28, 1997 in the United States District Court for the Western District of Texas alleging that the company conspired with T.G. Medical, Inc., Terry Geurink, and Col. Allan Bucknell to violate federal procurement statutes and to conceal the violations, in part through actions intended to damage her professional reputation.[2]  Specifically, Reid alleged that, sometime in 1993, during the course of her service as a military surgeon at Brooke Army Medical Center ("BAMC"), she discovered that a superior officer, Col. Allan L. Bucknell, had accepted travel and other expense reimbursements for Smith & Nephew meetings, allegedly in violation of federal procurement laws and regulations.  (Reid First Am. Compl. at ¶ 28.)  When she filed a formal complaint regarding Bucknell's conduct, Reid claimed that he, along with Geurink and T.G. Medical, took actions to undermine Reid's reputation and credibility in order that her claims of procurement violations would not be pursued.  (Id. ¶¶ 96-98.)  Reid contended that in order to conceal the procurement violations, a series of acts were carried out by Bucknell, T.G. Medical, and Geurink intended to discredit and injure her and to damage her reputation.  (Id. ¶¶ 95-99.)  Many of these alleged acts were in the nature of defamatory and disparaging statements about Reid's integrity and competence as a physician.  (See, e.g., Id. ¶¶ 110-13.)  Reid also maintained that, on February 28, 1995, in furtherance of the conspiracy, T.G. Medical and Geurink maliciously brought a civil action against her without probable cause, that was terminated in her favor.[3]  (Id. ¶¶ 146-51.)  Reid also alleged several other overt acts in furtherance of the conspiracy which either did not occur or were not apparent to her

---

[2] Reid subsequently filed an amended complaint on May 7, 1999.

[3] Hereinafter, "Geurink litigation."

2

until after February 28, 1995. (Id. at ¶¶ 152-196.)

It is undisputed that Smith & Nephew did not timely notify Federal of the Reid litigation after it was served on or around March 19, 1997. ((Def.'s Mot. Summ. J. ("Def.'s Mot. Summ. J.") Ex. 2, Dep. Jean Mercer ("Mercer Dep.") at 236 and Pl.'s Mem. Opp. Def.'s Mot. Summ. J. ("Pl.'s Opp. Def.'s Mot. Summ. J.") at 3.) The insured first provided Federal with notice of the action in April 1999. (Mem. Supp. Pl.'s Mot. Partial Summ. J. ("Pl.'s Mot. Partial Summ. J."), Ex. A, Dep. Bonnie Diane Wood ("Wood Dep.") at 41 and Pl.'s Opp. Def.'s Mot. Summ. J. Ex. F and G.) Following this and subsequent notice by Smith and Nephew, Federal informed the insured of its determination that Reid's allegations against Smith and Nephew were not within the insuring provisions of the general liability policy and of its refusal to defend or indemnify on that basis.[4] (Pl.'s Mot. Partial Summ. J. Ex. D, at No. 4; Pl.'s Opp. Def.'s Mot. Summ. J. Ex. H.)

It is also undisputed that Smith and Nephew was aware of the possible viability of a statute of limitations defense to Reid's claims when it filed its motion to dismiss early in the litigation. (Def.'s Mot. Dep. R. Laurence Macon ("Macon Dep.") at 77-79.) However, Plaintiff maintains that further discovery was necessary to determine the validity of the argument, and thus, Smith and Nephew did not assert the defense at that time. (Id. at 79-80.) The lawsuit proceeded through substantial discovery and on April 30, 1999 Smith and Nephew filed a motion for summary judgment on the grounds that Reid lacked any evidence that the company participated in the alleged conspiracy and further, that Reid's claims based on overt acts alleged prior to the applicable two-year

---

[4] Federal maintains that, while both complaints were reviewed, the decision to deny coverage was ultimately based on the allegations of the amended complaint, which Federal believed to be the operative pleading. (Wood Dep. at 64-66.)

statute of limitations were time barred.  (Decl. Katherine Compton ("Compton Decl.") ¶ 3 and Ex.

A at 4-19; Pl.'s Mem. Support Mot. Limine Post-Settlement Summ. J. Order ("Pl.'s Mot. Limine

Post Settlement Order") Ex D at 19.)  Prior to the district court's ruling on its motion for summary

judgment and after rejecting two prior offers from Reid to settle,[5] Smith and Nephew agreed to settle

the Reid lawsuit on February 23, 2000 for $500,000.  (Def.'s Mot. Summ. J. Ex. 7 at 1302.)  After

agreement was reached, but before it was memorialized, Western District of Texas Judge H.F. Garcia

issued an opinion on March 15, 2000 granting Smith and Nephew's motion and dismissing the action

on statute of limitations grounds.  (Compton Decl. Ex. K at 1-3.)  Reid subsequently filed a notice

of appeal on April 13, 2000 to the United States Court of Appeals for the Fifth Circuit.  (Id. ¶ 10.)

Thereafter, the parties executed a confidential Full and Final General Release and Settlement, after

which Reid voluntarily dismissed her appeal and Smith and Nephew made payment in the amount

of $500,000. (Declaration of James A. Ralston ("Ralston Decl.") ¶¶ 8 and Compton Decl. ¶ 11.)  It

is undisputed that Federal did not consent to or authorize any of the fees or expenses incurred by

Smith and Nephew in defending the Reid suit.  ((Def.'s Mot. Summ. J. Ex. 2, Dep. Jean Mercer

("Mercer Dep.") at 227.)

In an order entered on November 23, 2005 and subsequently clarified on December 12, 2005,

this Court denied Federal's motion for summary judgment and granted Smith & Nephew's motion

for partial summary judgment, finding that Smith & Nephew's late notice of the Reid action was not

a bar to coverage for pre-tender or post-tender costs because Federal was not in fact prejudiced.  The

---

[5] Laurence Macon, Plaintiff's counsel in the Reid litigation, testified at his deposition that Reid twice
offered to settle earlier in the litigation, once for payment of $12 million and later for more than $3.7
million.  Macon maintains that Smith and Nephew did not make a counteroffer because, it was the
company's position, the demands were excessive.  (Macon Dep. at 94-95.)

issue remaining for trial is a determination of whether the defense costs and settlement payment incurred by the Plaintiff were reasonable.

ANALYSIS

### I. Defendant's Motion to Exclude Evidence that Reid Lawsuit was Not Time-Barred

Federal requests that the Court prohibit Smith & Nephew from introducing evidence or offering any argument, statement or testimony that the underlying Reid lawsuit was not barred by the statute of limitations. Relying on the doctrine of judicial estoppel, Federal maintains that because Smith & Nephew "successfully and unequivocally" asserted a statute of limitations defense in the Reid action, it may not now claim that the action was not-barred by the statute of limitations. (Def.'s Mem. Support Mot. Limine  Summ. J. Order Reid Lit. ("Def.'s Mot. Reid Summ. J.") at 3.)

Under the equitable doctrine of judicial estoppel, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . ." New Hampshire v. Maine, 532 U.S. 742, 749, 121 S.Ct. 1808, 1814, 149 L.Ed.2d 968 (2001) (quoting Davis v. Wakelee, 156 U.S. 680, 689, 15 S.Ct. 555, 558, 39 L.Ed. 578 (1895); see also Eubanks v. CBSK Fin. Group, Inc., 385 F.3d 894, 897 (6th Cir. 2004). The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire, 532 U.S. at 749-50, 121 S.Ct. at 1814 (internal citations and quotation marks omitted). Parties should be prevented from abusing the process through "cynical gamesmanship," and "playing fast and loose with the courts." Browning v. Levy, 283 F.3d 761, 776 (6th Cir. 2002). However, the Sixth Circuit has instructed that the doctrine "should be applied with caution to avoid impinging on the truth-seeking function of the court, because the doctrine precludes

5

a contradictory position without examining the truth of either statement." <u>Eubanks</u>, 385 F.3d at 897

(citing <u>Teledyne Indus., Inc. v. NLRB</u>, 911 F.2d 1214, 1218 (6th Cir. 1990)) (internal quotation

marks omitted).  This Circuit has held that "judicial estoppel bars a party from (1) asserting a

position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2)

the prior court adopted the contrary position either as a preliminary matter or as part of a final

disposition." <u>Browning</u>, 283 F.3d at 775 (quoting <u>Teledyne Indus., Inc.</u>, 911 F.2d at 1218) (internal

quotation marks omitted).

 In its motion for summary judgment in the <u>Reid</u> litigation, Smith & Nephew argued that the

plaintiff failed to present any evidence that Smith & Nephew participated in the alleged conspiracy

and further, that she offered no evidence of any overt act by Smith & Nephew within the relevant

statute of limitations period.  The insured explained its statute of limitations defense by noting that

> [t]he last overt act in the conspiracy, if accomplished within the statute of limitations
> period does not revive lost claims because of the statutory time bar.  The Plaintiff
> must allege and prove that each defendant committed an overt act in furtherance of
> the alleged conspiracy within the limitations period . . . The Plaintiff cannot prove
> and has not even alleged that Smith & Nephew committed an overt act in furtherance
> of the alleged conspiracy between February 29, 1995 and February 28, 1997, when
> Plaintiff filed this lawsuit.  Consequently, Plaintiff's alleged cause of action against
> Smith & Nephew filed on February 28, 1997 is time barred and summary judgment
> should be granted in Smith & Nephews favor.

(Pl.'s Mot. Limine Post Settlement Order Ex. D at 18-19 (internal citations and quotations omitted).)

Smith & Nephew then proceeded to list the overt acts alleged by Reid to have taken place in

furtherance of the conspiracy which occurred prior to February 29, 1995 and stated that "[e]ach of

these acts occurred over two years prior to the filing of this lawsuit on February 28, 1997, therefore,

any § 1985(1) claim based upon such acts is barred by the statute of limitations." (<u>Id.</u> at 19.)  If the

court accepted Smith & Nephew's first contention, i.e. that insufficient evidence existed to

demonstrate Smith & Nephew's participation in the alleged conspiracy, then the lack of any overt act by Smith & Nephew during the statute of limitations period would serve as a basis for dismissal of Reid's complaint.

In the instant proceeding, Smith & Nephew argues that the Court should prohibit Federal from introducing, or making or eliciting any reference to, Judge Garcia's March 15, 2000 order in the Reid matter granting summary judgment on statute of limitations grounds, in part, on the basis that the order's analysis of the limitations issue is incorrect. Specifically, Smith & Nephew maintains that the dismissal of the Reid action was improper because it was based on the application of an erroneous "first overt act" accrual rule and an incorrect finding that the filing of the lawsuit by Geurink "on or about January 19, 1995, was certainly an overt act intended to damage Plaintiff, and it was one of which plaintiff was aware." (Pl.'s Mot. Limine Post Settlement Order at 17 quoting Reid v. Geurink, T.G. Medical, Inc. and Smith and Nephew Richards, Inc., No. SA-97-CA-0268, (W.D. Tex. filed Feb. 28, 1997).

Contrary to Federal's assertion, the Court finds that Smith & Nephew's earlier position is not inconsistent with that advanced here. In the instant action, Smith & Nephew continues to argue that a cause of action for each overt act accrues separately and that a plaintiff can only recover for those overt acts which occurred within the statutory period. Moreover, as it did in the cited motion for summary judgment, Smith & Nephew concedes that the *overt act* of the *filing* of the Geurink action was outside the statute of limitations for the    Reid litigation. However, Smith & Nephew now maintains, in addition to, but not in conflict with its earlier position, that Reid was not aware of the Geurink litigation until March 15, 1997. Smith & Nephew did not maintain a contrary position in the underlying litigation. That fact was insignificant to Smith & Nephew's motion for summary

7

judgment because it argued that the company was not a participant in the alleged conspiracy, and thus, any overt acts, such as the litigation filed by Geurink (of which Smith & Nephew was not a party), could not be attributed to it as a co-conspirator.  Here, the Plaintiff finds issue with the legal standard and analysis applied by Judge Garcia and maintains that admission of the order will result in unfair prejudice to Smith & Nephew.

Because the Court finds that Smith & Nephew's position in the earlier proceeding is not contrary to that advanced here, Federal's judicial estoppel claim must fail.  However, even if the positions are inconsistent, the same conclusion results because the Reid court did not "adopt[] the contrary position either as a preliminary matter or as part of a final disposition," the second requirement for a finding that judicial estoppel bars the assertion of a contrary position.  Browning, 283 F.3d at 775 (quoting Teledyne Indus., Inc., 911 F.2d at 1218) (internal quotation marks omitted). Regardless of whether a decision entered by a judge after a case has settled is considered a "final disposition," the Court finds that, in this case, the position adopted by Judge Garcia was not that advanced by Smith & Nephew.  It is undisputed that Judge Garcia reached the result sought by Smith & Nephew in its motion for summary judgment (i.e. dismissal of Reid's complaint).  However, the order entered on March 15, 2000 did not adopt the reasoning or position advanced by Smith & Nephew in reaching that result.  In its motion for summary judgment, Smith & Nephew advanced two interrelated arguments.  First, the insured maintained that Reid failed to provide any evidence that Smith & Nephew participated in a conspiracy to damage Reid's reputation.  Second, it argued that the action was barred by the applicable two-year statute of limitations because Reid failed to demonstrate any injury-producing act by Smith & Nephew within the statutory period.  According to Smith & Nephew's position, the acceptance of both arguments were essential to support a

8

determination that the statute of limitations was a complete defense to the action. Because Reid became aware of the defamation litigation within the statutory period and because she alleged additional overt acts by the co-conspirators occurring within the period, the limitations defense could not serve as a complete bar, according to the plaintiff, unless the court agreed with Smith & Nephew's argument that the complaint failed to allege evidence demonstrating that such acts were conducted pursuant to a conspiracy of which Smith & Nephew was a participant. (Pl.'s Mot. Summ. J. at 5-18.)

The Reid court did not find, as Smith & Nephew maintained, that Smith & Nephew was not a participant in the conspiracy alleged or that it did not commit any overt act within the limitations period. Rather, the court concluded that Reid's claims were time barred because the first overt act alleged as part of the conspiracy occurred beyond two-years from the filing of her complaint. Because the court did not embrace the reasoning or the conclusions of Smith & Nephew, it cannot be said to have adopted its position. Moreover, because the Reid court's determination was based wholly on its own reasoning, the Court finds that there is no indication that Smith & Nephew's assertions in the instant matter reflect negatively on judicial integrity. Accordingly, Defendant's motion in limine to exclude any argument, statement or testimony by Smith & Nephew that the underlying Reid lawsuit was not barred by the statute of limitations is DENIED.

## II. Plaintiff's Motion to Exclude Reid Post-Settlement Summary Judgment Order

In its Motion in Limine Regarding Post-Settlement Summary Judgment Order filed November 23, 2005, Smith & Nephew requests that the Court preclude Federal from introducing, or making or eliciting any reference to Judge Garcia's March 15, 2000 order ("Post-Settlement

Order"). Smith & Nephew maintains that the Order is irrelevant and further, that its admission would be unduly prejudicial.[6] Only relevant evidence is admissible. FED. R. EVID. 402 ("Evidence which is not relevant is not admissible."). Federal Rule of Evidence 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Nevertheless, relevant evidence may be excluded by the Court if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403.

As noted above, because Federal's liability to defend Smith & Nephew under the insurance policy has been affirmatively adjudged, the remaining issue for consideration at trial is the reasonableness of the defense costs and settlement amount paid by Smith & Nephew. The Plaintiff argues, based on the report and deposition testimony of the Defendant's expert, David E. Chamberlain, Esq., that Federal intends to use the Order as evidence that Smith & Nephew could have asserted a successful statute of limitations defense earlier in the proceedings and thus, the defense costs and settlement payment would have been much less. (See Pl.'s Mot. Limine Post Settlement Order Ex. L & M, Expert Report of David E. Chamberlain, Esq. ("Chamberlain Report") at 4-5 and Dep. David Chamberlain, Esq. ("Chamberlain Dep.") at 89-90, 97.) However, Smith & Nephew contends that because the reasonableness of its conduct must be viewed in the context of the facts and circumstances known at the time the relevant defense and

---

[6] Smith & Nephew also maintains that the Post-Settlement Order is inadmissible on grounds of hearsay and an improper "inva[sion of] the province of the Court to instruct the jury on the law." (Pl.'s Mot. Limine Post-Settlement Order at 19-20.) Because the Court finds the evidence inadmissible under Federal Rules of Evidence 401 and 403, these additional arguments are not considered.

settlement decisions were made, evidence which was "not a part of the landscape of the <u>Reid</u>

case" at the time of those decisions, is not relevant.  In support of its position, the Plaintiff cites

<u>Aks v. Southgate Trust Co.</u>, No. 92-2193-JWL, 1994 WL 171537 (D. Kan. 1994), where the

United States District Court for the District of Kansas, in determining the reasonableness of a

settlement entered into by an insured,  held that "[t]he conduct of the insured must be reviewed in

context; the court must consider how the case fairly appeared to the insured and its authorized

agents and attorneys at the time the relevant decisions were made." <u>Aks</u>,  1994 WL 171537 at

*10 .

The Court finds this reasoning to be persuasive.  While there is limited case law

addressing the perspective to be employed in reviewing the reasonableness of defense decisions

by an insured, this Circuit has consistently held that the good faith conduct of an insurer must be

considered from the time the insurance coverage decision is made.  <u>See</u> <u>e.g.</u>, <u>Conner v. Shelton</u>

<u>Mutual Ins.</u>, 779 F.2d 335, 340 (6th Cir. 1985) (noting that the after-the-fact determination of the

correctness of a claim decision is immaterial to establishing unreasonableness or bad faith on the

part of an insurer); <u>Fidelity & Guar. Co. v. Canale</u>, 257 F.2d 138, 140 (6th Cir. 1958).   Further, as

the Plaintiff notes, in determining reasonableness in other contexts, courts, including Tennessee

and this Circuit, commonly exclude hindsight as an appropriate evaluation tool. (<u>See</u> Pl.'s Mot.

Limine Post-Settlement Order at 11 n.16.)  Because the reasonableness of Plaintiff's defense and

settlement decisions made in the course of the <u>Reid</u> litigation can only be adequately evaluated

from the perspective of the decision-makers at the time they were made, any utilization of the

Post-Settlement Order as evidence of the unreasonableness of the resulting expense is irrelevant.

Further, the Court must agree with the Plaintiff that, even if the evidence were relevant,

11

any probative value would be substantially outweighed by the danger of unfair prejudice to Smith & Nephew and the potential to mislead the jury or confuse the issues for determination.  See FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.").  Presentation of a federal court's analysis of the statute of limitations issue would undoubtedly be highly persuasive, if not dispositive, to a jury and would therefore, cloud the evaluation of Smith & Nephew's defense decisions.  Further, as noted below, because the Reid opinion is not in accord with Fifth Circuit law on the accrual of a cause of action for statute of limitations purposes, consideration of the Post Settlement Order could likely result in confusion of the issues before the jury.  Accordingly, Plaintiff's motion in limine to exclude the introduction of evidence of, or reference to, the Post Settlement Order is GRANTED.

III.  Plaintiff's Motion Regarding Defendant's Expert Opinion of the Law

Plaintiff also moves the Court for an order prohibiting the Defendant from introducing, making or eliciting any reference to the opinion of its attorney witness expert, David Chamberlain, Esq., that the underlying action could have been successfully defended at a cost of $23,500 or less had Smith & Nephew sought summary judgment on a statute of limitations defense earlier in the proceedings.  (Mem. Supp. Pl.'s Mot. Limine Expert Opinion Law ("Pl.'s Mot. Limine Expert" at 1.)  Smith & Nephew asserts that Federal intends to argue at trial that the defense costs and settlement payment Smith & Nephew incurred were unreasonable because the case was barred by the statute of limitations and thus, the insured should have sought dismissal on this basis before significant litigation expenses were incurred.  (Id. at 2.)  In support of

12

Federal's position, Chamberlain will assert his conclusion that

> [i]f [Smith & Nephew] had filed a motion for summary judgment based on the
> statute of limitations defense within 90 days of service of this suit, there would
> have been no reason to expend more than 100 hours of legal work . . . Thus, it is
> my opinion . . . that the reasonable and necessary fees (including expenses) in the
> underlying action should have been no more than $23, 500.00.

(Chamberlain Report at 6.)  As a foundation for this conclusion, Chamberlain asserts that "it is

beyond any reasonable dispute that [Reid's] claims were barred as a matter of law by the statute

of limitations ."  (Id.at 5.)  Chamberlain's opinion regarding the viability of a statute of

limitations defense originates from his adoption of the analysis of the Post-Settlement Order in

the Reid litigation that, in order to establish a complete statute of limitations defense,  Smith &

Nephew was only required to show that  "one overt act that occurred before the statute of

limitations ran."[7]  (Chamberlain Dep. at 97.)

---

[7] Chamberlain's deposition testimony relevant to the basis underlying his conclusions is as follows:

Q:    What was the basis for your conclusion that the original complaint, the allegations of that,
      established that the case was barred by the statute of limitations?

A:    Well, taking this statement from the court order, which is Exhibit 7, it says, "Unlike Texas law,
      which views each overt act as a separate occurrence from which the statute of limitations begins
      to run anew, federal law holds that the accrual date for statute of limitations purposes is the first
      overt act that results in an injury of which the plaintiff was aware."  And I just found allegations
      throughout the original complaint of injurious conduct that was being conducted as early as
      1994.

                                          . . .

Q:    What is it that you believe that Smith & Nephew needed to show in order to establish that the
      statute of limitations had run with respect to [Reid's] entire claim?

A:    Exactly what the court says in it's order.

Q:    Can you point us to exactly what that is?

A:    They needed to show one overt act that occurred before the statute of limitations ran.

(Chamberlain Dep. at 89-90, 97.)

Federal Rule of Evidence 702 provides that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." FED. R. EVID. 702. Smith & Nephew does not challenge Chamberlain's qualification as an expert, but rather seeks to exclude his testimony on the basis that the proffered testimony is unreliable under the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). In Daubert, the Supreme Court held that, prior to admitting expert testimony, the district court must satisfy itself that the testimony "rests on a reliable foundation and is relevant to the task at hand." Daubert, 509 U.S. at 597, 113 S.Ct. at 2799. Daubert's application extends "not just to scientific evidence but to all expert testimony, including testimony based on technical and other specialized knowledge." Nemir v. Mitsubishi Motors Corp., 381 F.3d 540, 554-555 (6th Cir. 2004), reh'g en banc denied (Oct. 28, 2004) (citation omitted).

The Supreme Court in Daubert "listed several factors which the lower courts should consider in determining the reliability of scientific evidence, including: whether the theory can be reliably tested; whether it has been subject to peer review; what the theory or test's potential rate of error of is; whether there are standards controlling the test's operations; whether the theory or test is generally accepted; and whether the expert conducted the work independent of litigation." Thomas v. City of Chattanooga, 398 F.3d 426, 431 n.1 (6th Cir. 2005), cert. denied, ___ U.S. ___, 126 S.Ct. 338, 73 U.S.L.W. 3673 (U.S. Oct. 3, 2005) (No. 04-1478) (citing Daubert, 509 U.S. at 590-97). As the Advisory Committee observed,

[s]ome types of expert testimony will not rely on anything like a scientific

14

method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise. The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted. The expert's testimony must be grounded in an accepted body of learning or experience in the expert's field, and the expert must explain how the conclusion is so . . .

Fed. R. Evid. 702 advisory committee's note (2000 amendment).

Smith & Nephew contends that Chamberlain will testify, based on his review of the legal reasoning in the Post-Settlement Order, that the statute of limitations on a conspiracy cause of action under the federal civil rights laws accrues for all overt acts in furtherance of the conspiracy at the time of the first overt act. Applying this theory to the <u>Reid</u> matter, because the first overt act in furtherance of the conspiracy that Lt. Reid was aware of occurred prior to February 28, 1995, the statute of limitations on her cause of action, including all overt acts following the first, expired before her filing suit on February 28, 1997. In contrast, however, Smith & Nephew argues that rather than accruing at the time of the first overt act, the prevailing federal rule states that a cause of action for each overt act accrues separately. According to this argument, while some overt acts alleged by Reid were outside of the applicable statute of limitations, others were not. Smith & Nephew maintains that if the <u>Reid</u> court found it to be a co-conspirator with those who acted within the limitations period, dismissal would have been improper because the acts of the co-conspirators could have been attributed to the insured. Because the Post Settlement Order did not address the insured's participation in the conspiracy and applied an incorrect legal standard, Smith & Nephew contends that the dismissal, and Chamberlain's opinion based upon it, are erroneous.

The federal courts are in agreement that, although state law prescribes the statute of

15

limitations applicable to claims arising under the federal civil rights acts, federal law governs the time of accrual.  See e.g., Helton v. Clements, 832 F.2d 332, 334 (5th Cir. 1988); Gibson v. United States, 781 F.2d 1334, 1340 (9th Cir. 1986); Singleton v. City of New York, 632 F.2d 185, 191 (2nd Cir. 1980) .  It is also well-settled that a cause of action accrues under § 1985 when the plaintiff knows or has reason to know of the injury that is the basis for the complaint. See e.g., Jaghory v. New York State Dept. of Educ., 131 F.3d 326, 331 (2nd Cir. 1997);  Helton, 832 F.2d at 334-35; Lavellee v. Listi, 611 F.2d 1129, 1331 (5th Cir. 1980).

Rather than applying one limitations period to an entire conspiracy, the "prevailing federal rule" is that each overt act should be assessed separately for timeliness.  Scherer v. Balkema, No. 79C3686, 1986 WL 509, *4 (N.D. Ill. Dec. 12, 1986) (noting that this rule is applied to suits alleging civil rights conspiracies in the 1st, 2nd, 5th, 9th and D.C. circuits).  As explained by the Ninth Circuit in Gibson v. United States, 781 F.2d 1334 (9th Cir. 1985), the "last overt act doctrine,"[8] as applied by the federal courts, recognizes that "injury and damage in a civil conspiracy action flow from the overt acts, not from the mere continuance of a conspiracy. Consequently, . . . [t]he cause of action runs separately from each overt act that is alleged to cause damage to the plaintiff."  Gibson, 781 F.2d at 1340 (internal citations and quotations omitted). Under this rationale, plaintiffs may seek recovery for only those overt acts alleged to have taken place within the limitations period.  Id.

The Fifth Circuit expressly applied this rule in Mizell v. North Broward Hospital District,

---

[8] As noted in Scherer, some courts use the same designation to indicate a different rule.  For example, the Seventh Circuit terms its rule that "the limitations periods commence to run from the last overt act of the conspiracy" as the "last overt act doctrine."  Scherer, 1986 WL 509 at *4 (quoting Baker v. F & F Investment, 420 F.2d 1191, 1200 (7th Cir., 1970), *cert. denied*, 400 U.S. 821 (1970)).

427 F.2d 468 (5th Cir. 1970). The parties' positions, as explained by the Fifth Circuit, mirrored those in the instant case. Specifically,

> [t]he appellee contends that once it is conceded . . . that the first overt act alleged in the complaint occurred . . . outside the limitation period provided for in the statute, a complaint based on a single conspiracy charging such overt act, as well as others which occurred within the statutory period, is barred by the statute of limitations as to *all* acts . . . The appellant, on the other hand, . . . concedes that if the statute applies, and if it was not tolled, it remains open only as to those overt acts which fall within the statutory period.

Mizell, 427 F.2d at 475 (emphasis added). Relying on the Fifth Circuit decision in Crummer Co. v. Du Pont, 223 F.2d 238 (5th Cir. 1955), the lower court found in favor of the appellee/defendant and dismissed the complaint as time barred. In reversing the district court, the Fifth Circuit concluded that Crummer did not reach the issue then before the court. Mizell, 427 F.2d at 475. In Crummer, because *all* of the overt acts alleged in furtherance of the conspiracy occurred outside the relevant statute of limitations, the suit was properly dismissed. Id. However, unlike Crummer, the facts in Mizell included overt acts in furtherance of a conspiracy both within and outside the applicable statute of limitations. As such, the Fifth Circuit held that the trial court erred in dismissing the complaint because the first act occurred outside the statute of limitations. Id.

Federal maintains in its response to the instant motion that Smith & Nephew has mis-characterized Chamberlain's testimony as based on the "first overt act" theory. (Def.'s Resp. Pl.'s Mot. Limine Expert Opinions ("Def.'s Resp. Mot. Limine Expert" at 1.) Rather, it claims that the position of Chamberlain is more accurately described as holding that because no overt act by Smith and Nephew was alleged within the statute of limitations period, any acts within the period by co-conspirators cannot be attributed to it in an effort to revive time barred acts. (Def.'s

17

Resp. Mot. Limine Expert at 6-10.)  Further, Federal maintains that in order to survive a statute

of limitations defense, Reid must have alleged and proved that Smith & Nephew itself committed

an overt act in furtherance of the conspiracy within the limitations period.  (Id. at ¶ 4E citing

Morales v. Vega, 579 F.2d 677, 681 (1ˢᵗ Cir. 1978).)

However, Federal concedes that Chamberlain's conclusions are "based on and consistent

with 'exactly what [Judge Garcia] says in [his] order.'" (Id. at 1-2 quoting Chamberlain Dep. at

97).  Further, it is uncontested that Judge Garcia's dismissal of the Reid action in its entirety was

based on the legal premise that "[u]nlike Texas law, which views each overt act as a separate

occurrence from which the statute of limitations begins to run anew, federal law holds that the

accrual date for statute of limitations purposes is *the first overt act that results in an injury of*

*which the plaintiff was aware*." (Pl.'s Mot. Limine Expert Ex C at 1-2.) (emphasis added).  After

explicitly acknowledging that Judge Garcia's opinion, and thus his, was that Smith & Nephew

needed only to show "one overt act that occurred before the statute of limitations period" in order

to prevail on a statute of limitations defense, Chamberlain conceded, that if this legal proposition

were incorrect, his opinion would be affected.  (Def.'s Resp. Mot. Limine Expert Ex 2 at 97.)

Thus, from Chamberlain's testimony, the Court surmises that the reliability of his opinion as an

expert in this matter rests on the soundness of the proposition of law advanced by Judge Garcia

in the Reid opinion.

As noted above, Judge Garcia dismissed Reid's complaint as against all defendants on the

basis that "federal law holds that the accrual date for statute of limitations purposes is the first

overt act that results in an injury of which the plaintiff was aware." (Pl.'s Mot. Limine Expert Ex

C at 1-2.) From the language and result of this decision, it seems clear the Judge Garcia was

18

applying the "first overt act" theory.  However, in support of his conclusion, Judge Garcia relied

upon <u>Helton v. Clements</u>, 832 F.2d 332(5th Cir. 1988) and <u>Singleton v. City of New York</u>, 632

F.2d 185 (2nd Cir. 1980), both of which advance the prevailing federal "last overt act" test that

the statute of limitations accrues for each overt act independently.  Upon review, the Court finds

that these decisions are not inconsistent with <u>Mizell</u>, but were rather applied incorrectly in <u>Reid</u>.

In <u>Helton</u>, a former state employee brought suit against 42 state officials and his

employing state organization after his termination contending that they conspired to and did

deprive him of his constitutional rights to free speech, to petition for redress of grievances, and to

due process.  <u>Helton</u>, 832 F.2d at 333.  As Helton was first aware of his injury upon his

termination, the Fifth Circuit concluded that the applicable two-year statute of limitations began

on to run at that moment, namely on March 30, 1982. <u>Id.</u> at 335.  However, Helton did not file

suit until June 11, 1984.  <u>Id.</u>  Because he only alleged acts in violation of his rights by two

defendants within the two-year statute of limitations, the Fifth Circuit dismissed all claims

against the other 40 defendants.  <u>Id.</u> at 336.  Helton alleges that defendants, Landers and Rollins,

took an overt act in furtherance of the conspiracy against him on October 6, 1982 when they

denied his unemployment benefits.  <u>Id.</u> at 334.  Because this overt act was within the statute of

limitations, the Fifth Circuit did not dismiss Helton's cause of action against Landers and

Rollins.  <u>Id.</u> at 336.  Thus, while not explicitly explaining its reasoning, like in <u>Mizell</u>, the <u>Helton</u>

court clearly considered the statute of limitations of each overt act separately.

In <u>Singleton</u>, the Second Circuit affirmed the decision of the district court dismissing

plaintiff's complaint alleging assault and false arrest claims because they were time barred.

<u>Singleton</u>, 632 F.2d at 187.  Singleton filed suit February 9, 1979 alleging  violation of his

19

constitutional rights based on assault, arrest, and prosecution for resisting arrest. Id. at 188. All acts on which his claim was based took place between November 14, 1975 and December 16, 1976. Id. at 187.  In evaluating the statue of limitations issue, the Second Circuit considered the accrual of the cause of action for Singleton's assault, arrest, and prosecution independently. The court concluded that Singleton's claims for assault and false arrest accrued on November 14, 1975, the date of the assault and arrest, and thus, Singleton's awareness of the injurious acts. Id. at 191.  Because more than three years, the applicable statute of limitations, had passed since the accrual of the assault and false arrest, those claims were time barred. Id. at 193.  However, because the malicious prosecution claim was within the relevant period, it was not dismissed on limitations grounds. Id.

Both Helton and Singleton accurately represent the federal rule regarding accrual of causes of action that the statute of limitations in a civil conspiracy action runs separately from each overt act alleged to have caused injury.  Federal contends however that the logic of Helton supports the dismissal of Smith & Nephew from the Reid litigation and thus, the decision was correctly decided.  Specifically, Federal maintains that the dismissal of Smith & Nephew was proper because Reid did not allege any overt act taken by Smith & Nephew itself during the limitations period.  While the Court agrees that Helton could support the premise advanced by Federal, it is not the position advanced by Judge Garcia in the Reid decision.  Rather, it appears from the language that Judge Garcia incorrectly applied a first overt act theory to the facts in Reid. Had Garcia correctly applied Helton, dismissal of Smith & Nephew may have been proper. However, because overt acts by other defendants were alleged within the applicable limitations period, dismissal of the entire action would not result from such reasoning.  Rather, the Court

20

concludes that the only manner in which to reconcile the result reached by Judge Garcia is that he applied, as stated, the first overt act standard.

Because the Fifth Circuit has made it clear in <u>Mizell</u> its adoption of this federal theory, to the extent that the Post Settlement Order is inconsistent with the above, the Court finds that it is in error and may not be properly utilized as the foundation of a reliable expert opinion.  To the extent that Chamberlain's opinion is based on Judge Garcia's decision in <u>Reid</u> or the "first overt act" theory, the Court cannot conclude that his testimony meets the reliability standard imposed by the Federal Rules of Evidence and <u>Daubert</u>.  <u>See</u> <u>accord</u> <u>Carlson v. C.H. Robinson Worldwide, Inc.</u>, Civ. 02-3780 JNE/JGL, Civ. 02-4261 JNE/JGL, 2005 WL 758601, *4 (D. Minn. March 30, 2005) (holding that the expert's "failure to use the correct FLSA standard renders her conclusions unreliable.").  Accordingly, Plaintiff's motion in limine to exclude the introduction of, or reference to, any opinion of Chamberlain based on the first overt act theory or the <u>Reid</u> decision is hereby GRANTED.

IT IS SO ORDERED this 16th day of December, 2005.

J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 167 in case 2:02-CV-02455 was distributed by fax, mail, or direct printing on December 19, 2005 to the parties listed.

---

William B. Jakes
HOWELL & FISHER
300 James Robertson Pkwy
Nashville, TN 37201--110

Mark Vorder-Bruegge
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Martin C. Pentz
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Blvd.
Boston, MA 02210--260

Honorable J. Breen
US DISTRICT COURT